**Tilford YOUNGBLOOD, et al.,**
**Plaintiffs-Appellees,**

v.

**John W. DALZELL, et al.,**
**Defendants-Appellees,**

v.

**CINCINNATI FIREFIGHTERS UNION,**
**Intervenor-Appellant.**

No. 85–3628.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1986.

Decided Nov. 7, 1986.

James W. Hengelbrok argued, Cincinnati, Ohio, for intervenor-appellant.

M. Kathleen Robbins, Timothy M. Ruttle argued, Cincinnati, Ohio, for Dalzell.

Ronnie E. Dixon, Cincinnati, Ohio, John Schrider argued, for Youngblood.

Before LIVELY, Chief Judge; MERRITT, Circuit Judge; and CONTIE, Senior Circuit Judge.

LIVELY, Chief Judge.

In this civil rights action the intervenor, Cincinnati Firefighters Union, appeals from an order for compliance with a consent decree, entered with the approval of the original plaintiffs and defendants. The order for compliance related to promotions to the rank of lieutenant in the Cincinnati fire department, and required every sixth vacancy at that rank to be "double filled." The union opposed the order, contending that the order preferred black applicants for promotion who were not shown to have been actual victims of unlawful discrimination and that this preference worked to the detriment of white applicants who were

See also, D.C., 625 F.Supp. 30.

innocent of any unlawful discrimination. After careful review of the record, we affirm.

## I.

Two rejected black applicants for appointment to the position of "fire recruit" filed this action in 1973. They sought class certification and declaratory and injunctive relief, charging various Cincinnati city officials with "racial discrimination in the promotion of firemen and in the recruiting, testing and hiring of applicants for the position of fire recruit." The complaint also prayed for affirmative relief to remedy past racially discriminatory practices, citing the fact that Cincinnati had an almost all-white fire department. The plaintiffs claimed violations of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983.

The parties eventually agreed to a consent decree, which was approved by District Judge David S. Porter, and entered as an order of the court on May 7, 1974. The defendants denied that they had engaged in discriminatory acts against black applicants in recruiting, selecting and hiring or in promoting, but recognized that past practices might give rise to "an inference of a pattern or practice of discrimination" in the past. The decree referred to steps already taken to avoid such an inference and provided for additional measures to be taken for this purpose. The decree certified a class consisting of "all minority persons who have applied since January 1, 1968, or who might hereafter apply for the position of fire recruit in the Division of Fire and all minority firemen currently employed by the Division of Fire who have sought since January 1, 1968, or might hereafter seek promotion within the Division of Fire."

Paragraph 27 of the consent decree dealt with promotions:

> Defendants shall use a system for promoting qualified minority persons within the ranks of the Division of Fire to achieve a goal of a work force composition which negates any inference of an unlawfully discriminatory promotion policy based on race.

The order for compliance was based on paragraph 27.

## II.

Ohio law requires that vacancies in positions above the rank of "regular firemen" be filled by competitive promotional examinations. Ohio Revised Code (ORC) § 124.-45. Eligibility lists are compiled by placing the names of applicants who successfully complete an examination in rank order, beginning with the one receiving the highest grade. When a vacancy occurs the person having the highest position on the list must be appointed. Each eligibility list has a life of two years and all vacancies within the two year period must be filed from the list. ORC § 124.46. When a vacancy occurs in a promoted rank, and no eligibility list (one in effect for two years or less) exists for that rank, the Civil Service Commission is required to conduct a new competitive promotional exam. ORC § 124.48.

Cincinnati conducted a competitive examination for the rank of lieutenant in the fire department in 1981 and the list was published in 1982. Because no black candidates were ranked sufficiently high to make their promotion likely the Ohio Civil Rights Commission sought an order of enforcement under paragraph 27 of the consent decree. The intervenor union did not object to the entry of an order for compliance requiring vacancies to be "double filled," concluding that any detrimental effect on its members would be minimal. Subsequently, at the urging of some of its members the union did appeal the order. However, this court held, in an unpublished opinion, that the union lacked standing to appeal since it had suffered no injury.

Several vacancies in the rank of lieutenant occurred shortly after the expiration of the 1982 list. A new exam was given in 1984 and a new eligibility list containing more than 200 qualified candidates was published on September 26, 1984. The highest ranked black candidates were numbers 23, 42, 43, 67, 90 and 99. By March

11, 1985, the city had promoted 19 firefighters from the 1984 list to lieutenant, and all were white. At the rate vacancies were occurring it was clear that not more than one black firefighter would be promoted to lieutenant from the 1984 list. The plaintiffs then filed a motion to require enforcement of paragraph 27 by use of the double filling technique. The city supported the motion, noting a resolution of the City Council of October 19, 1984 that declared, "blacks are under-represented in the promoted ranks" and that expressed support "for the City administration to obtain the judicial order necessary to make affirmative action promotions to the position of fire lieutenant."

The district court granted the motion over the opposition of the intervening union. The order of enforcement required that each sixth vacancy be double filled with the highest ranked black candidate on the eligibility list. When the sixth vacancy occurred, the person who was sixth on the list as originally published would be at the top of the list, the five higher ones having been promoted to fill the first five vacancies. That person would be promoted and, in addition, the highest ranked black candidate, number 23, would also be promoted to lieutenant. When the twelfth vacancy occurred, the then highest ranked person would receive that promotion and, in addition, number 42, the highest ranked black candidate, remaining on the list would be promoted to an additional position.

The order concluded with the provision that when the 1984 promotion list expired, "a vacancy for Civil Service purposes will not occur until all double filled positions are absorbed into the complement." This "absorption" clause is the primary focus of the intervenor on appeal. The order for compliance also provided that it would dissolve upon expiration of the current eligibility list.

### III.

On appeal the intervenor argues that the district court exceeded its authority in entering the order for compliance. The union asserts that the district court erred by relying solely on a disparity in test results to order double filling. It relies on the fact that there has been no proof that the 1984 examination was discriminatory and contends that some proof of intentional discrimination was required before the district court could invoke an affirmative remedy. Citing *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), the intervenor also argues that the district court erred by imposing a remedy not provided for within the four corners of the consent decree. As it had in the district court, the union took the position in its brief that the district court erred by granting preferential treatment to black candidates who had not been proven to be victims of racial discrimination. In view of the Supreme Court's disposition of a similar "victim specificity" argument in *Sheet Metal Workers v. E.E.O.C.*, — U.S. —, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986), and *Firefighters Local No. 93 v. City of Cleveland*, — U.S. —, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), this point was not pressed at oral argument. See *Geier v. Alexander*, 801 F.2d 799 (1986) for this court's treatment of the same argument.

The appellees distinguish *Stotts* on a number of grounds. They point out that the district court in *Stotts* imposed a remedy that affected the seniority system of the Memphis firefighters, an issue not raised by the order for compliance in the present case. The district court's order in *Stotts* required white firefighters with greater seniority to be laid off while black firefighters with less seniority were retained during a period of reduction in forces. This remedy was ordered as a modification of a consent decree which did not deal with layoffs in any fashion. The appellees argue that *Stotts* provides no guidance in the present case because seniority and layoffs are not involved and the order for compliance did not modify the consent decree. They maintain that the order merely approved a remedy agreed to by the parties to the decree and that this remedy is clearly within the intendment and meaning of paragraph 27.

The intervenor and the appellees agree that paragraph 27 is unambiguous; yet they disagree on its meaning. The union reads the language as permitting affirmative action only after a finding of actual discriminatory conduct, as for example, administering a racially discriminatory exam. The appellees, pointing out that paragraph 27 requires the city to *use* a system for promoting qualified minority firefighters, state that the decree clearly authorizes affirmative remedies. Since the plaintiffs and the defendants entered into a consent decree that provided for use of a system of promotions that would advance qualified minority members of the force, no finding of specific discriminatory acts was required, the appellees maintain. They assert that the enforcement order is lawful when tested by standards set forth by the Supreme Court in *United Steelworkers v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), and by principles enunciated by this court in *Detroit Police Officers' Ass'n v. Young*, 608 F.2d 671 (6th Cir.1979), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981), and *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).

## IV.

Double filling is accomplished by the creation and filling of duplicate positions when designated vacancies occur. For example, under the 1982 order for compliance, on four occasions when a vacancy in the rank of lieutenant occurred, two appointments to the rank were made. The person at the top of the eligibility list was promoted along with the highest ranked black candidate on the list. The black appointee did not displace anyone on the list. No white candidate who otherwise would have been promoted was denied a promotion because of the requirement for double filling. Every vacancy that occurred during the life of the 1982 list was filled by the highest ranked candidate on that list. All were white. The positions filled by the "paired" black candidates were not actual vacancies; they were additional lieutenant positions that the city agreed to create to achieve the goal of the consent decree.

Similarly, no white candidate who would have been promoted from the 1984 list in the absence of the enforcement order was denied a promotion. Every vacancy for the position of lieutenant that occurred during the life of the 1984 eligibility list was filled in rank order. As a step toward its goal of a firefighting force that would be representative of the racial makeup of its population, the city created an additional lieutenant position for each sixth vacancy and filled it with a qualified black candidate.

Since every vacancy during the life of each eligibility list was filled by appointing the highest ranked candidate from the list, there was no detriment to any ranked candidate during the life of the list. The expiration of each list meant that those whose names were on it were no longer eligible for promotion. All promotions after the expiration date would be made from a new list to be compiled on the basis of the scores achieved on a new promotion examination. The only change effected by the order for compliance related to the timing of a subsequent competitive exam following the expiration of an eligibility list. Ordinarily, at the time the first vacancy occurred after the expiration of a list, a new exam would be administered and the vacancy would be filled by appointing the candidate who ranked first on that examination. Under the absorption provision of the consent decree, the new examination was postponed until the persons appointed to the double fill positions were absorbed into the regular complement of lieutenants by death, retirement or resignation.

Thus, the only detriment to any firefighter flowing from the order for compliance consisted of a delay in the time when he or she would become eligible to compete for promotion. No one was denied a promotion by operation of the absorption clause. All eligibility ended with the expiration of each eligibility list. No one who was on a previous eligibility list was carried over to the next one. A person whose number was not reached before the expira-

tion of a particular eligibility list went back to "square one." Only by making a passing grade on a subsequent exam could a firefighter again become eligible for promotion. The order for compliance changed none of these rules. The new examination would produce a new eligibility list and all vacancies again would be filled in rank order from that list.

## V.

### A.

We agree with the appellees that *Stotts* is not controlling. In the present case the district court did not undertake to modify a consent decree by issuing an order concerning a matter on which the decree was silent. Rather, the court ordered compliance with a specific provision of the decree, the one related to a system of promotions. In addition, the order in this case did not affect any firefighter's seniority rights, and it did not involve layoffs. The loss of a job is obviously a more serious detriment to an employee than the delay in an opportunity to establish eligibility for a promotion. The intervenor also relies on *Wygant v. Jackson Board of Education,* —— U.S. ——, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), where a plan that extended preferential protection against layoffs to minority employees was found to be an impermissible method of remedying present effects of past discrimination. Again, *Wygant* is distinguishable because it involved a plan by which nonminority public employees were displaced by minority employees. It was not a case where "the actual burden shouldered by nonminority [employees] is relatively light." *Id.* at 1851, quoting *Fullilove v. Klutznick,* 448 U.S. 448, 484, 100 S.Ct. 2758, 2778, 65 L.Ed.2d 902 (1980).

The consent decree in the present case did not contain quotas. Instead, it established a goal of having a workforce in the Division of Fire that would be 18% black by 1980. When this goal was not achieved, the decree was modified by agreement to give the city until the end of 1985 to reach the goal. In dealing with promotions paragraph 27 used no numbers at all. But it did require the city to use some system of promoting qualified minority firefighters in order to achieve the goal of a workforce that would negate any inference of an unlawful promotion policy based on racial discrimination.

The intervenor also argues that the consent decree was not voluntary. It is clear that the consent decree is not invalid merely because the union did not agree to it. *Firefighters v. City of Cleveland,* —— U.S. ——, 106 S.Ct. at 3079. The plaintiffs and the city voluntarily agreed to the terms of the decree, and the fact that it was not a subject of collective bargaining with the union is immaterial. The consent decree did not interfere with any right secured by collective bargaining, a fact recognized by the union when it decided not to oppose the 1982 order for compliance. Most important, however, is the fact that the consent decree imposed no duties or obligations on the union. An intervenor is entitled to have its interest considered, but it may not block a consent decree, agreed to by parties, by merely withholding its approval. *Id.* The consent decree was voluntary. By entering into the decree with its requirement for affirmative action to dispel inferences of discrimination based on the racial composition of the firefighting force the city recognized a compelling governmental interest in providing increased opportunities to minority individuals who aspired to be firefighters and to move up through the ranks. We conclude that the consent decree itself is valid. However, this conclusion does not end our inquiry.

### B.

Although the intervenor has attacked the validity of the consent decree itself, the particular issue in this appeal is whether the order for compliance contains a permissible remedy. The Supreme Court approved a voluntary agreement between a private employer and a union that involved race-conscious relief in *United Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). The Court held that

a voluntary race-conscious affirmative action plan is permissible when it is "designed to break down old patterns of racial segregation," when it does not "unnecessarily trammel the interests of white employees" and when it constitutes only "a temporary measure" designed "not to maintain a racial balance but simply to eliminate a manifest racial imbalance." *Id.* at 208, 99 S.Ct. at 2730. *Weber* involved a challenge under Title VII of the Civil Rights Act of 1964 and in *Firefighters v. City of Cleveland* the Supreme Court did not reach the issue of whether there might be other considerations under a Fourteenth Amendment challenge. 106 S.Ct. at 3073 n. 8. Nevertheless, we believe that the same basic considerations apply when a race-counscious remedy is challenged under the Equal Protection Clause of the Fourteenth Amendment.

The order for compliance seems manifestly reasonable to us. It clearly is designed to break down the patterns of racial segregation that gave rise to the consent decree. When the decree was entered there was one black lieutenant in the Cincinnati fire department, and when the 1984 competitive examination was given ten years later only five of 105 lieutenants were black. This condition did not change in the first six months under the new eligibility list. The next 19 promotions to lieutenant went to white candidates. It is equally clear that the double filling plan did not "unnecessarily trammel" the interests of white candidates for promotion. No white candidate who would otherwise have been promoted off the 1984 eligibility list failed to receive a promotion. Finally, the remedy contained in the order for compliance was temporary, since it dissolved automatically when the 1984 eligibility list expired.

On several occasions the Supreme Court has stated that race-conscious remedies must be "narrowly tailored" to achieve a legitimate goal in furtherance of a compelling governmental interest. *Wygant v. Jackson Board of Education*, 106 S.Ct. at 1846; *Fullilove v. Klutznick*, 448 U.S. at 480, 100 S.Ct. at 2775. Justice Powell, who provided the "swing vote" in *Sheet Metal Workers v. E.E.O.C.*, applied similar standards in concluding that the race-conscious remedy in that case was valid under the Constitution as well as under Title VII. 106 S.Ct. at 3054–55 (Powell, J., concurring in part and in judgment). The order for compliance in this case was carefully crafted by a distinguished district judge whose even-handedness and concern for fairness to all parties is displayed throughout the record. No qualified white candidate for promotion was denied advancement and only qualified black candidates received promotions. The city accepted the burden of appointing lieutenants not otherwise required at the time of appointment and the only price any member of the force was required to pay was a delay in the time when he or she might have the opportunity to qualify for promotion to fill a future vacancy. This is not too great a burden to impose upon the nonminority candidates in view of a long history of virtual exclusion of black firefighters from the promoted ranks. *Detroit Police Officers' Ass'n v. Young*, 608 F.2d 671, 696 (6th Cir.1979), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981) (reasonable for persons innocent of wrongdoing to bear some burden in order to correct effects of past wrongs); *Williams v. Vukovich*, 720 F.2d 909, 919 (6th Cir.1983) (a simple reduction in nonminority expectations for promotion does not render a consent decree unreasonable).

The judgment of the district court is affirmed.