**Tilford YOUNGBLOOD, et al., Plaintiffs,**

v.

**John DALZELL, et al., Defendants.**

**Civ. No. 8774.**

United States District Court, S.D. Ohio, W.D.

Jan. 5, 1989.

See also 123 F.R.D. 564.

Alphonse Gerhardstein, Marc Mezibov, Clarence Williams, Cincinnati, Ohio, for plaintiffs.

Rodney Prince, Mark Vollman, Julie Bissinger, Asst. Sol., Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court for determination of the future progress of this litigation. It has remained on the active docket of the United States District Court for the Southern District of Ohio in excess of fifteen years. The initial necessity of federal court intervention is not at issue nor is there any critical inquiry as to the role that the United States District Court has played.

There comes a time, however, in any litigation when a reexamination is appropriate. The basic question to be answered is that if fifteen years of supervision is not enough, what is? Does the United States District Court permanently engraft itself upon the appointment procedures of the City of Cincinnati while there exist well established and adequate statutes providing for a nondiscriminatory framework for such appointments? It is this Court's opinion that as a matter of policy intervention and supervision by the federal courts should be limited to situations where there are constitutional violations and that supervision should cease as soon as such violations are corrected. There must be a substantial difference between a federal court acting as a supervisor on a continuing basis and a federal court available to correct specific constitutional violations when they occur.

For support in its views the Court relies upon two pronouncements of the Supreme

Court of the United States. The elimination of discrimination against minorities in the appointment to the City of Cincinnati Fire Division is at least philosophically, and perhaps legally, equivalent to the termination of discrimination in the assignment of students to public schools. Beginning with *Brown, et al. v. Board of Education of Topeka, et al.*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955)1, the United States District Courts have been directed to oversee the eradication of all aspects of discriminatory treatment [1]. The time came, however, when the zeal of District Courts not just to eliminate discrimination, but to act as a super Board of Education, was discouraged. In 1976 Chief Justice Rehnquist, then an Associate Justice, so held in an opinion in *Pasadena City Board of Education, et al. v. Spangler, et al.*, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976). Justice Rehnquist was joined by Chief Justice Burger and by Associate Justices Stewart, White, Blackmun and Powell in pointing out that the District Court did not have a continuing function of oversight and the necessity of making continuing adjustments. Justice Rehnquist made the following statement:

> In this case the District Court approved a plan designed to obtained racial neutrality in the attendance of students at Pasadena's public schools. Nobody disputes that the initial implementation of this plan accomplished *that* objective. That being the case the District Court was not entitled to require the P.U.S.D. [Pasadena Unified School District] to rearrange its attendance zones each year so as to insure that the racial mix desired by the Court was maintained in perpetuity. For having once implemented a racially neutral attendance pattern in order to remedy the perceived constitutional violations on the part of the defendants, the District Court had fully performed its functions of providing the appropriate remedy for previous racially discriminatory attendance patterns. (Emphasis not added.)

*Pasadena* is instructive in the matter at hand even though this case does not deal with segregation of students. The parallel is obvious. This case was brought to deal with minority racial discrimination in the appointment of officers of the Cincinnati Fire Division. The wisdom of the predecessor Judge who has supervised this action is readily apparent. He drafted a solution which solved the problem and corrected the imbalance. Having done so *Pasadena* instructs that the function of the District Court is at an end.

Justice Rehnquist is also the author of another decision which this Court considers to be both instructive and binding. The task assigned to District Judges by *Brown* and its progeny created, inevitably, a tension between them and those institutions charged by law to perform analogous functions. This created the situation where District Judges began supervising school districts, jails, prisons, mental institutions and other public agencies. It cannot be asserted that the initial intervention was unnecessary. For example, state penal institutions in some instances were embodiments of Eighth Amendment violations. Only the activity of courageous District Judges in the affected states ever reestablished the supremacy of the United States Constitution. There have been situations where state officials either could not or would not correct these deficiencies and in that event the only recourse was to the federal courts. Intervention, however, must be limited to the correction of specific violations—not to establish a permanent edifice of federal court supervision. In 1979 Justice Rehnquist speaking for himself, Chief Justice Burger and Associate Justices Stewart, White and Blackmun wrote on this subject in *Bell, Attorney General v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The philosophy underlying this case may be found in the opinion beginning on page 562. Justice Rehnquist states: "There was a time not too long ago when the federal judiciary

---

1. "School boards ... were ... clearly charged with the affirmative duty to convert to a ... system in which racial discrimination would be eliminated root and branch...." *Green v. School Board*, 391 U.S. 430, 438, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968).

took a completely 'hands off' approach to the problem of prison administration. In recent years, however, these courts largely have discarded this 'hands off' attitude and have waded into this complex arena. The deplorable conditions and Draconian restrictions of some of our nation's prisons are too well known to require recounting here and the federal courts rightly have condemned these sordid aspects of our prison systems. But many of these same courts have, in the name of the Constitution, become increasingly enmeshed in the minutiae of prison operations. Judges after all are human. They no less than others in our society have a natural tendency to believe that their individual solutions to often intractable problems are better and more workable than those of the persons who are actually charged with and trained in the running of the particular institution under examination. But under the Constitution *the first question to be answered is not whose plan is best, but in what branch of the government is lodged the authority to initially devise the plan.*" (Emphasis added.)

*Bell v. Wolfish* does not deal with the promotions in a fire division. But, it is instructive. The State of Ohio for almost 100 years and the City of Cincinnati for almost 60 years have had a careful and comprehensive scheme for merit selection and promotion in fire divisions. We do not deal in a situation where the termination of this litigation would leave a vacuum with no governmental entity charged with the appropriate responsibility. At no time in this litigation has there been an assertion that the Civil Service laws of the State of Ohio are improperly administered or that the Civil Service Commission of the City of Cincinnati has been guilty of deliberate discrimination.

The problems that were originally presented to the United States District Court for the Southern District of Ohio have been solved. Arguably, the percentage of participation by minorities can be raised each year in an effort to justify the continuing supervision by the United States District Court. That may be the subject of a new lawsuit. It should not be a device to circumvent the laws of the State of Ohio, or to create a permanent "Super Civil Service Commission" consisting solely of a Judge of the United States District Court for the Southern District of Ohio.

The Court has read with great care the briefs submitted herein. After considering such filings and authorities which this Court deems to be controlling, the oversight by the United States District Court for the Southern District of Ohio should be and it is hereby terminated. The Clerk of this Court is directed to close this case forthwith.

IT IS SO ORDERED.