Timothy JANSEN, et al.,
Plaintiffs–Appellees,
Cross–Appellants,

v.

CITY OF CINCINNATI, et al.,
Defendants,

v.

Tilford YOUNGBLOOD, et al., Prospective Intervenors, Appellants,
Cross–Appellees.

No. 89–3783, 89–3828.

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1990.

Decided May 21, 1990.

William S. Wyler (argued), Donna M. Bergmann, Schwartz, Manes & Ruby, Cincinnati, Ohio, for plaintiffs-appellees cross-appellants.

Julie F. Bissinger, City Solicitor's Office, for the City of Cincinnati, Cincinnati, Ohio, for defendants-appellees.

John E. Schrider (argued), Lori K. Elliott, Legal Aid Society of Cincinnati, Cincinnati, Ohio, for intervenors-appellants cross-appellees.

Before KEITH and MILBURN, Circuit Judges; and WOODS, District Judge.[*]

KEITH, Circuit Judge.

A class of black applicants and black employees of the Division of Fire of the City of Cincinnati ("proposed intervenors")[1] appeal from the district court's July 27, 1989 order denying their motion to intervene in this civil rights case. Plaintiffs Timothy Jansen, Daniel Geons, Robert Prasse, Evan Wood and Mark Monahan ("plaintiffs") cross-appeal from the above-referenced order. The proposed intervenors argue that because they have a significant interest in the litigation and their motion to intervene was timely, they should be permitted to intervene as a matter of right. *See* Fed.R.Civ.P. 24(a)(2). Plaintiffs argue that although the denial of

---

[*] The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The proposed intervenors are the plaintiff-class in: *Youngblood v. Dalzell*, 625 F.Supp. 30 (S.D. Ohio 1985) (enforcement of consent decree), *aff'd*, 804 F.2d 360 (6th Cir.1986), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1576, 94 L.Ed.2d 767 (1987); *Youngblood v. Dalzell*, 123 F.R.D. 564 (S.D.Ohio 1989) (motion to intervene of Timothy Jansen, et al. denied); *Youngblood v. Dalzell*, 704 F.Supp. 137 (S.D.Ohio 1989) (federal district court terminating its supervision of Cincinnati's fire department under consent decree), *appeal argued*, No. 89–3141 (6th Cir. Dec. 7, 1989).

the motion to intervene was proper, the district court also should have found that the disposition of the present action would not impair or impede the proposed intervenors' ability to protect their interest because the City of Cincinnati ("City") adequately protects such interest. For the reasons set forth below, we REVERSE the district court's denial of the motion to intervene.

## I.

In 1973, two black applicants who had been rejected for the position of "fire recruit" sued the City. They alleged that various city officials practiced racial discrimination in promoting firefighters and in the recruitment, testing and hiring of applicants for the fire recruit position. *Youngblood v. Dalzell*, 804 F.2d 360, 361 (6th Cir.1986). On May 7, 1974, the parties entered into a court-approved consent decree. The City and its officials denied engaging in racial discrimination, but recognized that past practices might give rise to an inference of a pattern or practice of past discrimination. *Id.* The consent decree certified a class consisting of: (1) all minority persons who, since January 1, 1968, applied for or might hereafter apply for the position of fire recruit; and (2) all currently employed minority firefighters who, since January 1, 1968, sought or might seek promotion within the Division of Fire. Joint Appendix at 269 (*Youngblood v. Dalzell*, No. 8774 (S.D.Ohio May 7, 1974) (consent decree)).

The consent decree establishes an affirmative action program governing hiring and promotion decisions in the Division of Fire. Paragraph 8 of the consent decree permanently enjoins the City from:

[A]ny act or practice which has the purpose or effect of wrongfully discriminating against any minority applicant or potential applicant, or any minority employee of the Division of Fire, because of

such individual's race with respect to recruiting, testing, selecting, hiring, training, conditions of employment, and promotions and from engaging in any other acts or practices which have the purpose or effect of denying equal employment opportunities to minorities.

Joint Appendix at 270–71. The purpose of the consent decree is to eliminate discriminatory hiring and promotion practices. It provides: (1) goals and timetables for increasing the proportion of minorities in the Division of Fire; (2) procedures for recruiting minority applicants; and (3) requirements concerning the selection process. Subject to the availability of qualified applicants, the consent decree compels the City to achieve a racially integrated work force in the Division of Fire.[2] The consent decree sets out specific guidelines for the use of written examinations in hiring firefighters. Paragraph 25 states:

In no event shall the Division of Fire be required to hire a person as a fire recruit who is not qualified. Scores on selection procedures which have not been validated in accordance with the EEOC guidelines or scores on validated standards which are not sufficiently different as to predict a significant difference in job performance shall not be used in determining the qualifications of applicants. A valid ranking of applicants for the position of fire recruit is not prohibited by this paragraph.

Joint Appendix at 278.

In the 1988 fire recruit selection process, the City administered a written examination. Those applicants who passed the written examination and other portions of the selection process were placed, according to their race, on separate eligibility lists. One eligibility list was designated for whites; the other was designated for minorities. From the two eligibility lists, the City hired 24 white fire recruits and 16 black fire recruits in August 1988.

---

**2.** Paragraph 22 of the consent decree specifically requires the City to "achieve a work force composition which will not support any inference of racial discrimination in hiring." Joint Appendix at 277. The City agreed to an 18 percent minority work force composition goal.

Paragraph 23 provides that "[the City] shall be deemed to have sought to achieve each stage of the work force composition goals in good faith, if at least forty percent (40%) of the total Fire Recruit Class for any given year consists of minority persons." *Id.*

Plaintiffs, white applicants who were denied admission to the 1988 fire recruit class, filed suit against the City and its officials on February 2, 1989.[3] Plaintiffs allege that the City's use of separate race-based eligibility lists and its use of a predetermined 40 percent minority quota violated the consent decree and 42 U.S.C. §§ 1981, 1983 and 1988.

On March 3, 1989, the City filed its answer to plaintiffs' complaint. The City defended the challenged practices based on its compliance with the consent decree. The district court scheduled discovery through January 1, 1990. Trial was tentatively set to commence in February 1990.

On April 17, 1989, plaintiffs filed a motion for summary judgment on the issue of liability. Plaintiffs advanced two arguments. First, they maintained that the consent decree never required or authorized the City to use separate eligibility lists. Second, even if the consent decree originally authorized the use of separate eligibility lists, when the 18 percent minority composition goal was met,[4] the use of separate eligibility lists was no longer permitted.

The City responded to plaintiffs' motion for summary judgment on May 23, 1989. It argued that the 18 percent minority composition goal is merely an interim goal. As such, the consent decree authorizes the use of separate eligibility lists to meet other established hiring and promotion goals.[5]

The proposed intervenors filed their motion to intervene on June 9, 1989, contending that the City failed to advance important arguments in support of its 1988 hiring practices. *See* Fed.R.Civ.P. 24(a)(2) and (b). Specifically, the proposed intervenors maintained that the City failed to rely on Paragraph 25 of the consent decree which prohibits the use of: (1) scores in selection procedures which have not been validated in accordance with the EEOC guidelines; and (2) scores on validated standards which are not predictive of job performance. Joint Appendix at 278. The proposed intervenors argued that the consent decree's general requirement that the City engage in race-conscious hiring, as well as its authorization that the City ignore scores "on validated standards which are not sufficiently different as to predict a significant difference in job performance" support a finding that the use of separate eligibility lists to select the 1988 fire recruit class was authorized by the consent decree. *Id.*

On July 20, 1989, the proposed intervenors filed a motion for leave to file a memorandum in opposition to plaintiffs' motion for summary judgment. The memorandum was tendered with the motion.

On July 27, 1989, the district court denied the proposed intervenors' motion to intervene pursuant to Rule 24(a)(2) and (b) of the Federal Rules of Civil Procedure. The district court found the proposed intervenors' interest in the litigation insufficient to support intervention and their motion untimely.

The proposed intervenors filed a timely notice of appeal on August 18, 1989; plaintiffs cross-appealed on August 28, 1989.

## II.

 Our review of this matter is confined to the issue of whether the district court erred in denying the proposed intervenors' motion to intervene. Intervention balances two competing interests—judicial economy resulting from the disposition of

---

**3.** Prior to filing suit, Plaintiffs moved to intervene in *Youngblood v. Dalzell* which was then subject to the continuing jurisdiction of the United States District Court for the Southern District of Ohio. Plaintiffs' motion was denied because they did not have a significant protectable interest in the property or transaction which is the subject of the litigation. *Youngblood v. Dalzell,* 123 F.R.D. 564, 566–67 (S.D.Ohio 1989). Subsequent to this ruling, the Supreme Court held in *Martin v. Wilks,* — U.S. —, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), that white firefighters who failed to intervene in earlier employment discrimination proceedings in which a consent decree was entered may collaterally challenge employment decisions made pursuant to such decree. *Id.* at 2184.

**4.** The 18 percent minority composition goal was met on December 31, 1986.

**5.** As the arguments addressing the summary judgment motion are not properly before this court, we will not address them.

related issues in a single lawsuit and focused litigation resulting from the need to govern the complexity of a single lawsuit. As a general rule, a person cannot be deprived of his or her legal rights in a proceeding to which such person is neither a party nor summoned to appear in the legal proceeding. *See, e.g., Martin v. Wilks,* — U.S. ——, 109 S.Ct. 2180, 2185, 104 L.Ed.2d 835 (1989) (citing *Chase National Bank v. Norwalk,* 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894 (1934)). The need to settle claims among a disparate group of affected persons militates in favor of intervention.

> Rule 24(a)(2) provides in pertinent part: (a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). Intervention as a matter of right is proper when the proposed intervenors demonstrate that the following four criteria have been met: (1) the motion to intervene is timely; (2) the proposed intervenors have a significant legal interest in the subject matter of the pending litigation; (3) the disposition of the action may impair or impede the proposed intervenors' ability to protect their legal interest; and (4) the parties to the litigation cannot adequately protect the proposed intervenors' interest. *Triax Co. v. TRW, Inc.,* 724 F.2d 1224, 1227 (6th Cir.1984).

The timeliness requirement of Rule 24(a)(2) is reviewable under the abuse of discretion standard. *Grubbs v. Norris,* 870 F.2d 343, 345 (6th Cir.1989) (citing *Bradley*

*v. Milliken,* 828 F.2d 1186, 1191 (6th Cir. 1987); *Michigan Association for Retarded Citizens v. Smith,* 657 F.2d 102, 105 (6th Cir.1981)). The remaining requirements are subject to *de novo* review. *See Grubbs,* 870 F.2d at 345; *accord County of Orange v. Air California,* 799 F.2d 535, 537 (9th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## A. TIMELINESS

The proposed intervenors argue that the district court erred in finding their motion to intervene untimely. Plaintiffs contend that the district court's finding was proper because the motion was filed when the case was ripe for adjudication. After carefully considering the relevant circumstances surrounding the timing of the motion, including the posture of the case, we disagree with the district court's determination and find that the motion to intervene was timely.

 The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances. *See Bradley v. Milliken,* 828 F.2d 1186, 1191 (6th Cir.1987). We have held that the following factors should be considered: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Grubbs,* 870 F.2d at 345.[6]

 The proposed intervenors seek intervention to protect their rights guaranteed

---

**6.** Relying on *Martin v. Wilks,* — U.S. ——, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1980), the proposed intervenors argue that all parties to the original consent decree *must* be able to participate in subsequent lawsuits challenging the implementation of the decree. Bearing in mind *Martin's* endorsement of affording all affected parties the

opportunity to participate in litigation that affects their rights and interest, we still are bound to evaluate the district court's denial of the motion to intervene within the context of the *Grubbs* factors. We find nothing in *Martin* to support the evisceration of Rule 24(a)(2)'s timeliness requirement.

under the consent decree that they entered with the City. When the proposed intervenors filed their motion to intervene on June 9, 1989, only half of the 12 month discovery period had elapsed. From the outset of the litigation,[7] the proposed intervenors knew their interest would be affected. They were not aware, however, that their interest was inadequately represented by the City until the City responded to the plaintiffs' summary judgment motion.[8] The City's arguments in response to plaintiffs' summary judgment motion, most notably its failure to rely on relevant paragraphs of the consent decree, alerted the proposed intervenors that their interest was not being adequately protected. The City filed its response to the proposed intervenors' motion for summary judgment on May 23, 1989. Approximately two weeks elapsed between the time in which the proposed intervenors learned of their need to intervene and when they filed their motion to intervene. Certainly, this short period does not support a finding of undue delay. In fact, the proposed intervenors proceeded with haste from the time that they became aware that the City's interest differed from their interest.

We find the district court's assessment that the original parties were prejudiced by the proposed intervenors' failure to intervene promptly clearly erroneous. First, the proposed intervenors filed their motion to intervene as soon as they realized that their interest was not protected. Second, the original parties' interests are better served by having *all* relevant interests represented prior to the summary judgment motion's disposition because piecemeal litigation is likely to be avoided. Third, on June 20, 1989, less than two weeks after moving to intervene, the proposed intervenors moved to file a memorandum in opposition to summary judgment and tendered the memorandum with the motion. These actions were taken while the motion

to intervene was pending, thereby enabling the district court to consider proposed intervenors' interest without delaying a ruling on the summary judgment motion. We, therefore, conclude that the original parties were not prejudiced by the timing of the motion to intervene. While affording due deference to the district court's determination, our application of the *Grubbs* factors to this case, nevertheless, leads us to conclude that the proposed intervenors' motion to intervene was timely filed. *See Grubbs*, 870 F.2d at 345.

## B. SIGNIFICANT LEGAL INTEREST IN THE SUBJECT MATTER OF THE LITIGATION

 Applicants for intervention as a matter of right must have a significant legal interest in the subject matter of the litigation. Fed.R.Civ.P. 24(a)(2); *see, e.g., Nuesse v. Camp*, 385 F.2d 694, 699 (D.C. Cir.1967). The district court concluded that the proposed intervenors did not have a significant protectable interest in this litigation. We disagree.

Like the present case, *In re Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492 (11th Cir. 1987) *aff'd sub. nom. Martin v. Wilks*, —— U.S. ——, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), involved black individuals, who were parties to a consent decree that arose out of a case alleging racial discrimination in the employment of firefighters. They moved, both in their individual capacities and as class representatives, to intervene as third-party defendants in a suit filed by white firefighters. The firefighters alleged that they had been denied promotions due to discriminatory practices committed by the City of Birmingham and the Jefferson County Personnel Board pursuant to the consent decree. *Id.* at 1495. The proposed intervenors sought, pursuant to Fed. R.Civ.P. 23, to represent the class of black

---

7. On February 2, 1989, plaintiffs served a copy of the complaint on counsel for the proposed intervenors.

8. In its answer, the City presented cursory denials of plaintiffs' allegations, providing the proposed intervenors with no indication that the

City's interest in the litigation was divergent from their own. Likewise, the City's answers to plaintiffs' interrogatories failed to notify the proposed intervenors that they should seek intervention.

applicants and employees that had negotiated and signed the consent decree in 1981. Because the relief requested by the plaintiffs, if granted, would foreclose future promotions of blacks under the decree and perhaps result in the demotion of blacks already promoted, the proposed intervenors argued that they were entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2). The district court denied the motion to intervene under Rule 24(a), but granted it under Rule 24(b) (permissive intervention). The Eleventh Circuit held that the proposed intervenors were entitled to intervene as of right because they represented the interests of persons whose jobs were directly at stake. *In re Birmingham,* 833 F.2d at 1496 n. 13.

The Eleventh Circuit's analysis is particularly applicable to the present case. The proposed intervenors, present and future black applicants for employment and promotion in the Division of Fire, are *parties* to the consent decree challenged in this action. The consent decree governs hiring and promotion decisions in the Division of Fire by setting goals for minority hiring and timetables for achieving racial integration. At stake in this litigation is the proposed intervenors' interest in continuing affirmative action under the consent decree. Chiefly, the plaintiffs' challenge jeopardizes the 1988 minority fire recruits' positions and all future hiring and promotion decisions made regarding minority firefighters. The subject matter of the litigation requires an interpretation of the consent decree negotiated by the proposed intervenors and the City when they were in the midst of an adversarial relationship. Therefore, as parties to the consent decree, the proposed intervenors have a significant legal interest in its interpretation. *See In re Birmingham Reverse Discrimination Employment Litigation,* 833 F.2d at 1496 n. 13.

### C. IMPAIRMENT OF INTEREST THROUGH DISPOSITION OF THE ACTION

Plaintiffs contend that the district court should have found that the proposed inter-venors' ability to protect their interest is unimpaired by this action. Finding plaintiffs' argument unpersuasive, we hold that disposition of the present action without the proposed intervenors would indeed impair or impede their ability to protect their rights guaranteed under the consent decree.

Disposition of this case in an adverse manner would impede the proposed intervenors' ability to enforce the provisions of the consent decree regarding hiring decisions, use of separate eligibility lists and maintenance of the minority composition goals. Subsequent to this litigation, the City may be left with obligations to the proposed intervenors under the consent decree that are inconsistent with its obligations to plaintiffs. *Cf. Mann v. City of Albany, Ga.,* 883 F.2d 999, 1002–03 (11th Cir.1989) (parties to consent decree entered with the city must be joined as necessary parties under Fed.R.Civ.P. 19, where action cannot proceed without subjecting the city to a substantial risk of incurring inconsistent obligations). Should the district court find, in this action, that the use of race-conscious hiring practices is not authorized by the consent decree, the proposed intervenors will be bound by that decision in any subsequent enforcement actions. We join other circuits in holding that the possibility of adverse stare decisis effects provides intervenors with sufficient interest to join an action. *See United States v. State of Oregon,* 839 F.2d 635, 638 (9th Cir.1988); *Neusse v. Camp,* 385 F.2d 694, 702 (D.C. Cir.1967); *Atlantis Dev. Corp. v. United States,* 379 F.2d 818, 829 (5th Cir.1967). Accordingly, the disposition of the present action without the proposed intervenors will impede their ability to protect their interest in the consent decree.

### D. INADEQUATE REPRESENTATION OF INTEREST

■ The proposed intervenors' right to intervene as a party depends also on whether their interest is adequately protected by the existing parties. *See Neusse,* 385 F.2d at 702. The proposed intervenors bear the burden of demonstrating inade-

quate representation. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir.1987) (citing *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 293 (6th Cir.1983)). "[T]hat there is a slight difference in interests between the [proposed intervenors] and the supposed representative does not necessarily show inadequacy, if they both seek the same outcome.... However, interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse*, 385 F.2d at 703.

 Presently, the proposed intervenors are challenging the City's continued discrimination against blacks in violation of the consent decree. *Youngblood v. Dalzell*, No. 89–3141 (6th Cir.) (argued Dec. 7, 1989). This fact alone weighs heavily in favor of finding that the City inadequately represents the interests of the proposed intervenors. *See* 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1909 at 321–23 (1986) ("The [proposed intervenor] cannot be required to look for adequate representation to one who is his [or her] opponent...."). The district court denied the motion to intervene without reaching this issue. We believe, however, that the proposed intervenors have overcome the presumption of adequate representation that arises when the proposed intervenors and a party to the suit have the same ultimate objective. *See Bradley v. Milliken*, 828 F.2d at 1192.

The proposed intervenors' interest in the present and future employment and promotion in the Division of Fire is distinct from the City's interest in defending its 1988 hiring practices. Although the City and proposed intervenors contend that the use of separate eligibility lists is authorized by the consent decree, the City's failure to rely on Paragraph 25 as an affirmative defense to its actions indicates that the City and the proposed intervenors have divergent views regarding the proper interpretation of the consent decree. The proposed intervenors have a significant interest in enforcing the City's commitment to racially integrate the Division of Fire through affirmative action. The City, in contrast, has an interest in protecting its integrity as an employer; therefore, the City's interest in the consent decree resides in its authorizing function. These differences in interests pose more than a mere disagreement over litigation strategy. *Cf. Bradley v. Milliken*, 828 F.2d at 1192.

The proposed intervenors allege that the City's 1988 hiring process used selection devices which adversely impacted on minority applicants. They argue that the City failed to validate the test scores as required under the consent decree; therefore, the scores cannot be used as the sole basis for fire recruit selection. The consent decree prohibits the City's use of a written test which has a disproportionate adverse impact on minorities unless it has been validated pursuant to EEOC regulations, 29 C.F.R. § 1607.1 *et seq.* The proposed intervenors contend that the 1988 test had a disproportionately adverse impact on minorities. Had the City hired by test scores off of one eligibility list, less than ten percent of those hired would have been minorities. Under the consent decree, the City was obligated to offset the improper effects of the test. Therefore, the use of separate eligibility lists was authorized by the consent decree, as the test results had a diminished weight in the fire recruit selection process.

In contrast, the City does not admit violating the consent decree's test validation requirement, yet it maintains that race-conscious hiring was proper. Proffering this alleged violation of the consent decree as an affirmative defense is directly counter to the City's interest. The City and the proposed intervenors agree that race-conscious hiring was authorized by the consent decree, but they differ regarding the rationale for such conclusion. The proper disposition of this case depends on a thorough evaluation of the authority the consent decree confers on the City. Accordingly, both the City's and the proposed intervenors' interpretations of the consent decree must be presented. The City failed to present the proposed intervenors' interpretation of the requirement for EEOC validation of test standards. This validation, however, is a crucial aspect of the consent

decree's guidelines on race-conscious employment decisions. Unless the proposed intervenors are permitted to intervene, this conflict of interest between the City and the proposed intervenors will leave the proposed intervenors' interest inadequately represented.[9]

### III.

We hold that as parties to the consent decree, the proposed intervenors have a significant legal interest in the subject matter of this litigation. Disposition of this case in their absence would impair the proposed intervenors' ability to protect their legal interest in the minority fire recruits' positions and continued affirmative action in hiring and promotions pursuant to the consent decree. We conclude that the City cannot adequately represent the proposed intervenors' interests. In addition, the motion to intervene was timely. Having satisfied all of the requirements set forth in Rule 24(a)(2), the proposed intervenors should be permitted to intervene as a matter of right. Therefore, we REVERSE the district court's denial of the motion to intervene and REMAND this case for proceedings consistent with this opinion.

---

**9.** Alternatively, the proposed intervenors assert that the district court abused its discretion in denying their motion for permissive intervention. *See* Fed.R.Civ.P. 24(b). Our holding that the district court erred in denying the proposed intervenors' motion to intervene as a matter of right renders the challenge to the district court's denial of permissive intervention moot.