Beverly **BLOUNT–HILL, et al., Plaintiffs,**

v.

**State of OHIO, et al., Defendants.**

No. 3:04cv197.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 26, 2005.

David Gary Latanick, Robert Latham Washburn, Jr., Sue A. Watson, Cloppert Portman Sauter Latanick & Foley—2, Columbus, OH, Jerry Alan Spicer, Peter Joseph Rakay, Rakay, Spicer & Ledbetter—3, Dayton, OH, for Plaintiffs.

J. Joseph Bodine, Jr., Office of the Ohio Attorney General, Todd Robert Marti, Ohio Attorney General, Donald Carl Brey, Chester Willcox & Saxbe—2, Columbus, OH, for Defendants.

## DECISION AND ENTRY OVERRULING MOTION TO INTERVENE OF WHITE HAT MANAGEMENT, LLC (DOC. # 9)

RICE, District Judge.

Plaintiffs brought this litigation alleging that the funding provisions of the Community Schools Act, O.R.C. § 3314 (the "Act"), violate both the state and federal constitutions. Currently before the Court is the Motion to Intervene of White Hat Management, LLC ("White Hat"). (Doc. # 9).

### I. *STANDARD GOVERNING MOTION TO INTERVENE*

Under the Federal Rules of Civil Procedure, a non-party to an action may intervene as "of right":

Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect

that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). Rule 24 also provides the standard for permissive intervention, stating that:

> Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b).

## II. ANALYSIS

### A. Intervention as of Right

■ In this circuit, in order to be entitled to intervene as a matter of right, proposed intervenors must establish four elements: 1) that the motion to intervene was timely; 2) that they have a substantial legal interest in the subject matter of the case; 3) that their ability to protect that interest may be impaired in the absence of intervention; and 4) that the parties already before the court may not adequately represent their interest. See Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir.1990).

### 1. Timeliness

■ The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances. See Bradley v. Milliken, 828 F.2d 1186, 1191 (6th Cir.1987). The following factors should be considered: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. Grubbs v. Norris, 870 F.2d 343, 345 (6th Cir.1989).

■ White Hat's Motion to Intervene was filed nearly five months after the Plaintiffs' Complaint was filed. Shortly after White Hat moved to intervene, the Plaintiffs filed an Amended Complaint. Since then, the Defendants have answered and subsequently filed a motion to dismiss. Little discovery has been conducted, and the Court's ruling on the Defendants' Motion to Dismiss is pending. Neither party to the litigation argues that the motion to intervene was late. Considering the foregoing, White Hat's Motion to Intervene was timely.

### 2. Substantial Interest

■ The proposed intervenor must show that they have a substantial interest in the subject matter of this litigation. See Jansen, 904 F.2d at 341. The Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention of right." Michigan State AFL–CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir.1997). For example, an intervenor need not have the same standing necessary to initiate a lawsuit. See id.; Purnell v. City of Akron, 925 F.2d 941, 948 (6th Cir.1991). The Sixth Circuit has also "cited with approval decisions of other courts 'rejecting the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" Miller, 103 F.3d at 1245 (quoting Purnell, 925 F.2d at 948). "The inquiry into the substantiality of the claimed interest is necessarily fact-specific." Id. Even if it could be said that the question raised is a close one, "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." Miller, 103 F.3d at 1247.

■ White Hat does not operate a community school that would be directly impacted by a decision finding the funding provisions of the Act unconstitutional. Instead, White Hat is a management firm whose sole source of income is derived from contracts with community schools. White Hat argues that if the Court were to find the funding provisions of the Act unconstitutional, it would mean the end of community schools and consequently the destruction of its business. Central to its argument is its characterization of the Plaintiffs' Complaint and the

Plaintiffs' goal. White Hat argues that the Plaintiffs seek an end to community schools and towards that end seek to have the Act authorizing the schools declared unconstitutional. *See,* Doc. # 14 at 1–2. It is apparent that White Hat has misread the Plaintiffs' Complaint.

White Hat believes that the Plaintiffs have asked "that the State be permanently enjoined from providing funds to community schools." *Id.* at 2. However, what the Plaintiffs seek is "a permanent injunction barring defendants from *unconstitutionally* diverting funds from traditional public school districts as is now permitted under [the Act]." Doc. # 1 at 29, letter G (emphasis added).[1] Far from seeking the end of community schools in general, the Plaintiffs argue only that the current method of funding and oversight is unconstitutional. White Hat's argument regarding its interest in the subject matter rests on the idea that if the Court were to grant the relief that the Plaintiffs seek, it would mean the end of community schools in Ohio and, by extension, the end of White Hat's solvency. What White Hat has missed is that, even were the Court to grant the relief the Plaintiffs request and find that the current funding scheme is unconstitutional, there is nothing preventing the State from instituting a funding scheme that would pass constitutional muster.

 While White Hat's interest in the subject matter is not as immediate as it has argued, it does exist. Although its interest is in the economic consequences of the Court's decision and not in the legal or factual questions at issue, its interest is not insubstantial. As stated, the Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention of right ..., [and] close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Miller,* 103 F.3d at 1245–47. While White Hat's interest in the subject matter is neither as broad nor as immediate as it suggests, it is sufficient to satisfy this requirement.

### 3. *Impairment*

 "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Miller,* 103 F.3d at 1247 (citing *Purnell,* 925 F.2d at 948). Again, White Hat relies on its argument that a ruling in the Plaintiffs' favor would necessarily mean the end of community schools and the end of White Hat as a going concern. The Plaintiffs argue that White Hat has overstated the impact that a ruling in their favor would have. While the Plaintiffs are correct that White Hat's argument does misconstrue their position, and exaggerates the consequences of a ruling favorable to them, White Hat has still demonstrated that it can satisfy the impairment element. To satisfy this element, it is not necessary that the would be intervenor demonstrate that the impairment is probable; they need only demonstrate that such is possible. While there is nothing to indicate that the impairment White Hat sees is likely to result from a ruling in favor of the Plaintiffs, it is one of the *possible* consequences of such a ruling. As the Sixth Circuit has stated, the burden for satisfying this element is minimal, and White Hat has satisfied its burden.

### 4. *Inadequate Representation*

 Finally, the prospective intervenors must show that the existing defendants may not adequately represent its interests. However, proposed intervenors are "not required to show that the representation will in fact be inadequate." *Miller,* 103 F.3d at 1247. Proposed intervenors are required only to show that the representation might be inadequate. *See Id.* Indeed, "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.* The proposed intervenors' burden in showing inadequacy is "minimal." *See Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Lin-*

---

1. While the Plaintiffs have filed an Amended Complaint, White Hat's Motion to Intervene preceded that pleading. As all of White Hat's arguments are directed at the initial Complaint, for the purposes of ruling on White Hat's Motion to Intervene, the Court will reference the Plaintiffs' original complaint.

*ton v. Commissioner of Health & Env't.*, 973 F.2d 1311, 1319 (6th Cir.1992). The proposed intervenors need show only that there is a potential for inadequate representation. *See id.*

 White Hat argues that none of the current Defendants shares its economic interest in the outcome of the case, and, therefore, they will not adequately represent its interest. While it is certainly true that none of the Defendants is as economically dependent on the continued existence of community schools as is White Hat, this difference in economic interests is not sufficient to demonstrate the possibility of inadequate representation. Where the proposed intervenor and the defendants seek the same outcome, the fact that there is a difference in interests is not by itself sufficient to demonstrate the possibility of inadequate representation. *See, Jansen,* 904 F.2d at 343. Here, both White Hat and the Defendants seek to have the funding provisions of the Act declared constitutional. White Hat has offered nothing, beyond its collateral, financial interest in the outcome of the case, that would suggest that the current Defendants would fail to represent its interests adequately. While the burden here is minimal, White Hat has offered nothing to satisfy that burden; consequently, it is not entitled to intervention as a matter of right.

While White Hat is not entitled to intervene as a matter of right, it still may be permitted to intervene. Permissive intervention is in the discretion of the Court.

### B. *Permissive Intervention*

 Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the "applicant's claim or defense and the main action have a question of law or fact in common." Fed. R.Civ.P. 24(b)(2). In exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Purnell,* 925 F.2d at 951. As noted earlier, the motion to intervene was timely. White Hat's claim that the Act is constitutional presents a question of law common to the main action. *See, Miller,* 103 F.3d at 1248. However, while White Hat's intervention will not cause any undue prejudice, it will cause undue and unnecessary delay.

 White Hat argues that its interest in this litigation is more than that of an interested observer; consequently, it seeks to intervene. The purpose of intervention is to represent its interest in a way that the current Defendants will, or may, not. However, White Hat has failed to identify how the current Defendants will fail to represent its interest adequately. If White Hat is allowed to intervene, it is presumed that it will seek discovery, file motions seeking to dispose of claims it believes are not supported by law or fact, and, in the event this case goes to trial, seek to call and question witnesses and to enter evidence into the record. All of this will require the Plaintiffs and the Court to invest a significant amount of time and effort in response. While White Hat's perspective is different from that of the Defendants, it has offered nothing to indicate that its contribution will add anything of unique value. It argues that, at this stage of the litigation, it is too early to determine what motions it intends to file and what discovery it hopes to conduct However, the Court is comfortable in presuming that it will file motions, and will seek to conduct discovery. If White Hat were to do otherwise, it would be relegating itself to the role of interested observer, a role that does not require intervention. It has failed to indicate how its unique perspective would impact upon the issues currently before the Court. Allowing it to intervene would result only in the duplication of the efforts of the existing Defendants and undue delay of the litigation. Consequently, the Court will not permit White Hat to intervene.

As a practical matter, the current Defendants have a sufficient interest in the constitutionality of the funding provisions of the Act, that the collateral, financial interests of White Hat will be sufficiently protected.

### III. *CONCLUSION*

White Hat is not entitled to intervene in this action as a matter of right and the Court will not permit it to do permissively. The

Motion to Intervene of White Hat Management, LLC (Doc. # 9), is OVERRULED.