Timothy JANSEN, Daniel K. Goens, Robert H. Prasse, Evan Wood, and Mark E. Monahan; William Neal, Brian Clemens, Frank Gorrasi, Gregory Hissett, and Philip S. Ramstetter; Daniel R. Corry, Noah A. Gibbs, IV, Timothy P. Burwick, Lawrence D. Cappel, Robert Hart, Jeffrey H. Sweet, Mark E. Kreimer, Nicholas Schibi, and Timothy A. Cunningham, Plaintiffs–Appellees, Cross–Appellants (91–3500),

v.

CITY OF CINCINNATI, Scott Johnson, Civil Service Commission, William Miller, and Norman Wells, Defendants–Appellants (91–3498), Cross–Appellees.

Tilford Youngblood, Ralph Nichols, and the Plaintiff Class Consisting of Black Applicants for and Black Employees of the Division of Fire of the City of Cincinnati, Intervenors–Appellants (91–3499), Cross–Appellees.

Nos. 91–3498, 91–3499, 91–3500.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1992.

Decided Oct. 13, 1992.

Rehearing and Rehearing En Banc Denied Dec. 29, 1992.

See also 904 F.2d 336.

William S. Wyler (briefed), Donna M. Bergmann (briefed), Donald B. Hordes (argued and briefed), Schwartz, Manes & Ruby, Cincinnati, Ohio, for plaintiffs-appellees, cross-appellants.

Mark C. Vollman (argued and briefed), Julie F. Bissinger (briefed), Fay D. Dupuis, City Solicitor's Office for the City of Cincinnati, Cincinnati, Ohio, for defendants-appellants, cross-appellees.

John E. Schrider (argued and briefed), Lori K. Elliott, Legal Aid Soc. of Cincinnati, Alphonse A. Gerhardstein, Laufman, Rauh & Gerhardstein, Cincinnati, Ohio, for intervenors-appellants, cross-appellees.

Before: KEITH and MILBURN, Circuit Judges; and WOODS, District Judge.*

KEITH, Circuit Judge.

The several appeals in the present action arise from the March 18, 1991, order from the Southern District of Ohio, 758 F.Supp. 451, which dissolved a portion of a 1974 consent decree entered into by the City of Cincinnati (hereinafter "the City"). The decree sets forth a plan for the recruitment, hiring, and promotion of minority fire division personnel. For the reasons stated below, we VACATE the order and REMAND the case to the district court for further proceedings consistent with this opinion.

## I.

The City, the Legal Aid Society and the Ohio Attorney General entered into a Consent decree that was approved by the United States District Court, Southern District of Ohio, in May 1974. The decree sets

---

* The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

forth various steps to be taken by the City for the purpose of integrating its Fire Division. The decree contains provisions regarding the advertisement of job openings to reach minority applicants, the recruitment, hiring, promotion of minorities within the Fire Division and overall record keeping. With respect to hiring, the City agreed to pursue an overall workforce composed of eighteen percent minorities. Paragraph 22 of the decree states in pertinent part:

Subject to the availability of qualified applicants, Defendants shall adopt and seek to achieve a goal of hiring sufficient numbers of qualified minority persons to achieve a work force composition which will not support any inference of racial discrimination in hiring. Such goal shall be deemed to have been achieved when *at least eighteen (18) percent of the Division of Fire Personnel of the City of Cincinnati are minority persons.* In order to reach this goal, Defendants shall adopt and seek to achieve a goal of hiring sufficient minority persons so that the personnel in the Division of Fire will be:

4.2% Minority by December 31, 1974
6% Minority by December 31, 1975
8% Minority by December 31, 1976
10.5% Minority by December 31, 1977
13% Minority by December 31, 1978
15.5% Minority by December 31, 1979
18% Minority by December 31, 1980
(emphasis added).

Paragraph 23 states further:

Defendants shall be deemed to have sought to achieve each stage of the work force composition goals when and as the above percentages of the Fire Division personnel are minority persons either on or within one month before or after the above dates; provided, however, that Defendants shall be deemed to have sought to achieve such stage of the work composition goals in good faith *if at least forty (40) percent of the total fire recruit class for any given year consists of minority persons* (emphasis added).

To achieve the hiring goals of this consent decree, the City has implemented a procedure which creates two lists for hiring consideration. The Fire Recruit Majority List consists of those non-minority candidates who have successfully completed all phases of the Fire Recruit selection process. The Fire Recruit Minority List consists of those minority candidates who successfully completed all phases of the Fire Recruit selection process. The City has taken sixty (60) percent from the majority list and forty (40) percent from the minority list to accomplish the stated forty percent objective of paragraph 23 of the Consent decree.

Paragraph 27 of the Decree further mandates the following:

Defendants shall use a system for promoting qualified minority persons within the ranks of the Division of Fire to achieve a goal of a work force composition which negates any inference of an unlawfully discriminatory promotion policy based on race.

The last sentence of the consent decree states: "At any time after the objectives of this decree have been achieved, the Defendants may move this Court, on due notice, for dissolution of the Decree." The City has not moved the district court for dissolution of the consent decree and has indicated that it does not intend to do so. Accordingly, all of the terms of the Decree remained in effect at the commencement of this litigation. *See Youngblood v. Dalzell,* 123 F.R.D. 564 (S.D.Ohio 1989).

The Cincinnati Fire Division's selection process is an extensive multi-step process to assess the qualifications of applicants. The total process consists of a written examination, a physical ability test, a medical examination, a background investigation, and a psychological evaluation. A score of seventy (70) or above on the written examination is passing. Each of the other components are scored pass/fail.

After the applicants successfully advance through the first five steps of the selection process, they are then placed on an eligible list and certified to the Fire Chief for consideration for hiring under the "Rule of Three" process of the Ohio Civil Service Commission. Ohio Rev.Code

§ 124.27. The Rule of Three permits the Fire Chief to select a candidate for hiring from the top three people on the eligible list. It does not guarantee employment to those ranking highest on a given eligibility list, but merely guarantees hiring consideration.

The three cases at issue herein were consolidated by orders of the district court due to the identical nature of the claims of the plaintiffs in all of the cases.[1] All three classes of plaintiffs were white applicants for the position of fire recruit. They each claim they were wrongfully denied such positions in the recruit classes between 1988 and 1990. Plaintiff's argue principally that since they scored higher on the Civil Service examination than any of the minorities appointed under the terms of the Decree, they should have been hired. The plaintiffs sought relief in the form of immediate job placement in the fire department and backpay from the date of the alleged discrimination. We note that, of the fifteen plaintiffs in this consolidated action, nine have been hired by the Cincinnati Fire Division as recruits in subsequent recruit classes.

In addition, this Court previously granted the petition to intervene filed by a class consisting of black applicants and black employees of the Fire Division (collectively "Intervenors"). The Intervenors claim that the City has engaged in racially discriminatory hiring practices in the past few years. See Jansen v. City of Cincinnati, 904 F.2d 336 (1990).

In the proceeding at bar, the district court made certain findings of fact and conclusions of law. The court first found that the "maximum goal of 18%" in the consent decree had been achieved in 1986. The district court then found that the implementation of the dual list was not authorized by the wording of the consent decree. Accordingly, the district court held: "Where a stated percentage of minority employment has been achieved for a substantial period of time, that portion of a

Consent decree is at an end and may be terminated as to such hiring practices." The district court then dissolved the hiring provision of the decree and held that this paragraph was severable from the rest of the decree. Additionally, the district court noted that, because the process is "subject to the 'Rule of Three', a remedy for successful plaintiffs may only place them back on an eligible list but not require the appointing authority to waive its rights under the Rule of Three." The court, thereby, denied plaintiffs' request for job placement and backpay. Furthermore, the district court ignored the claims of racial discrimination in the selection process made by the Intervenors when it dissolved the hiring provision.

The respective parties appealed from each adverse ruling. Because the district court's interpretation of Paragraph 22 contravenes the original stated purpose of the consent decree, we REMAND the case to the district court for proceedings consistent with this opinion.

## II.

On appeal, the plaintiffs principally argue that the district court did not provide a sufficient remedy to compensate them for the grieved wrong. They also argue that the City's implementation of the dual lists to fulfill its obligations under the decree involved the use of impermissible quotas. Because the remedy necessarily depends on the asserted right, we first address the validity of the City's utilization of dual lists in hiring fire recruits.

This Circuit has recently set the parameters within which we review challenges to consent decrees in Vogel v. City of Cincinnati, 959 F.2d 594 (6th Cir.1992). The Vogel Court stated:

[A] consent decree, although in effect a final judgment, is a contract founded on the agreement of the parties.... It should be construed to preserve the position for which the parties bargained.... A consent decree "is not enforceable di-

---

**1.** The plaintiffs in Jansen v. City of Cincinnati claim they were wrongfully denied hiring from the fire recruit class in 1988. The plaintiffs in

Neal v. City of Cincinnati and Corry v. City of Cincinnati claim that they were wrongfully denied hiring in classes in 1989 and 1990.

rectly or in collateral proceedings by those who are not parties to it. . . ." It "may be challenged only on the ground that its substantive provisions unlawfully infringe upon the rights of the complainant." . . .

. . . To have standing, a party must be aggrieved by the judicial action from which it appeals. . . . Regardless of how moderate a preference the decree accords women and minorities, if there is some detriment to the party challenging the decree, that party has sufficient standing to challenge the decree. Moreover, in the recent case of *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), the Court adhered to the general rule that a party cannot be deprived of rights at a proceeding to which he is not a party. The (Supreme) Court held in *Martin*, that people who are not made a party to a consent decree have standing to commence an action challenging the constitutionality of the decree as it is applied to them.

*Vogel*, 959 F.2d at 598–99 (citations omitted).

Analyzing the facts of this case in accordance with *Vogel*, these plaintiffs lack standing to challenge the City's interpretation of the consent decree. Moreover, they lack standing to have that decree interpreted upon their own terms. Our review is thus limited to the plaintiffs' challenge to the constitutionality of the decree as it is applied to them. With that premise, we evaluate the City's fire division consent decree and the district court's interpretation of that decree in its order of March 18, 1991.

### A.

■ The City's implementation of the consent decree has resulted in their adoption of what has traditionally been termed an affirmative action plan. *See, e.g., Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992); *Wygant v. Jackson Board of Educ.*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986). The Supreme Court has recently determined that in our review of a race-conscious affirmative action pro-

gram, we must evaluate the implemented scheme under strict scrutiny. *Wygant v. Jackson Board of Educ.*, 476 U.S. 267, 274, 106 S.Ct. 1842, 1847, 90 L.Ed.2d 260 (1986). *See generally, City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). Any such classification must be narrowly tailored to achieve the stated objective and that objective must be compelling. *Wygant*, 476 U.S. at 274, 106 S.Ct. at 1847. In our review of affirmative action plans, this Circuit has noted that "although initial employment opportunities coupled with hiring goals may burden some innocent individuals, they do not impose the same type of intrusive injuries that layoffs, which result in loss of job expectancy, security, and seniority, involve." *Long v. City of Saginaw*, 911 F.2d 1192, 1196–97 (6th Cir.1990) (citing *Wygant v. Jackson Board of Educ.*, 476 U.S. 267, 283, 106 S.Ct. 1842, 1851, 90 L.Ed.2d 260 (1986)).

■ While a strong evidentiary basis must exist to conclude that remedial action in the form of affirmative action is necessary, "evidence of wide statistical disparities . . . may justify an affirmative action policy adopted by a public employer." *Wygant*, 476 U.S. at 274–75, 106 S.Ct. at 1874. The statistical inquiry here compares the racial composition of the City's Fire Division with that of the relevant qualified labor market. *Vogel*, 959 F.2d at 599–600 (citing *Wygant v. Jackson Board of Educ.*, 476 U.S. 267, 274, 106 S.Ct. 1842, 1847, 90 L.Ed.2d 260 (1986) and *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989)). This Court has already recognized that the manifest imbalance in the fire division with regard to racial composition justified the 1974 order implementing the decree. *See Youngblood v. Dalzell*, 804 F.2d 360, 364 (6th Cir.1986).

Our second inquiry focuses on whether this affirmative action mechanism, employed since the inception of the consent decree and used in the selection process between 1988 and 1990, was narrowly tailored to accomplish the stated goal. This inquiry is of particular importance because

it directly relates to whether the district court correctly dissolved the eighteen percent (18%) hiring goal of the consent decree in its February 1992 order.

In assessing whether the "dual list" procedure was narrowly tailored to accomplish the stated objectives of the consent decree, Justice O'Connor's comments in *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) are instructive. Justice O'Connor wrote for a plurality of the Court:

> [T]he purpose of strict scrutiny is to "smoke out" illegitimate uses of race by assuring that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool. This test also ensures that the means chosen "fit" this compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate racial prejudice or stereotype.

*Croson*, 488 U.S. at 493, 109 S.Ct. at 721. We note further that Justice O'Connor, in *Wygant v. Jackson Board of Educ.*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), found that the non-minority challengers of the affirmative action plan bear the burden of establishing that their constitutional rights have been violated. *Wygant*, 476 U.S. at 277–78, 293, 106 S.Ct. at 1848–49, 1857. We note that in the several appeals involving the City's Fire Division consent decree that have come before this Court, this Circuit has validated, *sub silencio*, the City's use of dual lists for hiring purposes. *See Youngblood v. Dalzell*, 925 F.2d 954 (6th Cir.1991); *Youngblood v. Dalzell*, 625 F.Supp. 30 (S.D.Ohio 1985), *aff'd*, 804 F.2d 360 (6th Cir.1986), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1576, 94 L.Ed.2d 767 (1987).

■ The plaintiffs assert that, because the City did not elevate them to the eligible lists on the basis of ranked test scores and in accordance with the Civil Service Exam system, their constitutional rights were violated. Paragraph 25 of the consent decree is instructive with regard to the proper use of the written examination scores. Paragraph 25 states:

In no event shall the Division of Fire be required to hire a person as a fire recruit who is not qualified. *Scores on selection procedures which have not been validated in accordance with the EEOC guidelines or scores on validated standards which are not sufficiently different as to predict a significant difference in job performance shall not be used in determining the qualifications of applicants.* A valid ranking of all applicants for the position of fire recruit is not prohibited by this paragraph. (emphasis added)

The decree clearly permits the use of properly validated test scores to rank recruits. These written examinations, however, have not been validated in accordance with EEOC guidelines. Moreover, no evidence has been presented to indicate that the scores which result "predict a significant difference in job performance."

The plaintiffs argue that the eligible list rankings for "Rule of Three" purposes are taken directly from the test results. They argue that, because the Fire Division uses the test scores in this manner, there must be a necessary correlation between one's exam performance and one's job performance. While this may be a convenient method of elevating persons to the Rule of Three eligible list, there is no indication that the chosen fire personnel, who score higher on the exam, perform better on the job. The test merely ensures, as required by the consent decree, that each fire recruit is "qualified."

We further note that had the City not utilized the dual lists between 1988 and 1990 for hiring, significant under-representation of minorities in each class would have resulted. Absent the affirmative action procedure from 1988–1990, less than ten (10) of one hundred fifteen (115) applicants elevated for Rule of Three purposes would have been minorities. Utilizing the dual lists, however, the total number of minority hirees was consistent with the relevant pool of applicants in each of the three years.

Moreover, each of the minorities placed on the eligible list was qualified to be hired.

Each applicant elevated to the Rule of Three stage and subsequently hired successfully completed each of the five components of the evaluation process. Each applicant was required to pass a security clearance and undergo physical, medical, and psychological evaluations. Additionally, as noted above, the written examination is only one of five components in the evaluation process, and the test was validated only as to content and not for rank order. Accordingly, these plaintiffs had no reasonable expectation that hiring would be solely on the basis of ranked exam scores.

For each of the above stated reasons, we hold that the use of the dual lists in implementing the consent decree is constitutional and did not abridge any of the applicants' constitutional rights. This holding is consistent with this Circuit's previous pronouncements regarding the validity of this consent decree.

### B.

■ The district court's order appears to render the above discussion moot in light of three findings made by the district court. The district court first stated that "[s]ince December 31, 1986, the staffing level of the Fire Division has consisted of 18% or more minority individuals." It went further to state that "[t]he critical date herein is August 7, 1988, when plaintiffs sat for the examination. On that date, the goal (of 18%) had been reached." The district court then analyzed the hiring provisions of consent decree and found the following:

> Somehow the simple English words of paragraph 23 have been construed to be an addendum to paragraph 22. If so, it is completely inconsistent with the "goal" of 18%. There is no language in the Consent decree requiring the fire division at any time to consist of 40% minority persons ... The Court can only construe the existing Consent Decree *in haec verbae* lists a maximum goal of 18%. There is no dispute among the parties that 18% had been achieved prior to the date on which these plaintiffs took the entrance examination.

Based on these findings, the district court stated that its holding was a "limited" one that "finds only that the goal of the Consent decree as it relates to hiring has been achieved," and ostensibly dissolved only paragraph 22 of the consent decree.

We believe that the district court's "limited" order has misconstrued the essence of the affirmative action plan as envisioned by the parties. First, this Court finds no "maximum" goal stated in paragraph 22 of the Consent decree. We find only a target of "at least 18% that will not support any inference of racial discrimination in hiring." Furthermore, the language of paragraph 23 is not only congruous with the language of paragraph 22, but also sets forth the base formula which the City should use to ultimately attain the decree's goal of a balanced workforce in the City's Fire Division.

Furthermore, the district court failed to follow the dictates of *Board of Educ. of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991), and *Youngblood v. Dalzell*, 925 F.2d 954 (6th Cir.1991). In *Dowell*, the Supreme Court was faced with a school desegregation consent decree and its proper dissolution. The Court stated that the proper inquiry into the continued effectiveness of the consent decree was "whether the Board has complied in good faith with the desegregation decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practicable". *Dowell*, 498 U.S. at ——, 111 S.Ct. at 638.

With regard to the overall interpretation of and adjudication of claims under this particular consent decree, this Circuit, in *Youngblood* stated:

> A key provision of the consent decree in this case is paragraph 34, governing continuing jurisdiction of the court and duration of the consent decree. That paragraph provides that the court's jurisdiction over the case may be terminated when the defendants are shown to be in "compliance with [its] terms," and that the decree may be dissolved "after the objectives of this decree have been

achieved." Relevant to the former clause, *this circuit has held that a district court may not close a case governed by a consent decree without addressing pending claims that the defendants have violated the decree.* United States v. City of Cincinnati, 771 F.2d 161, 168–69 (6th Cir.1985). Relevant to the latter clause, the Supreme Court has held in the school desegregation context that where the defendant school district has achieved one of the objectives of a multi-faceted desegregation order, the district court's remedial authority with regard to that aspect of the school system is at an end and that part of the injunction must be dissolved. *Pasadena City Bd. of Educ. v. Spangler,* 427 U.S. 424, 436–37, 440, 96 S.Ct. 2697, 2704–05, 2706–07, 49 L.Ed.2d 599 (1976).

*Youngblood,* 925 F.2d at 957–58 (emphasis added). The *Youngblood* Court further stated:

> If the district court determines that in spite of the defendant's failure to achieve the specific terms of the consent decree in a timely fashion, the goal which the 18 percent requirement sought to achieve—the eradication of discriminatory hiring—has been achieved, then the court may dissolve that portion of the decree. In making this determination, the court must consider the argument in the plaintiffs' Motion to Modify that in the years since 1974, the racial composition of the City's work force has so changed that 18 percent minority hiring goal no longer is sufficient to dispel the inference that the City's hiring practices are discriminatory. Paragraph 34 of the consent decree allows the court to modify or amend the terms of the decree, and under *City of Cincinnati* the court's failure to consider such arguments would be erroneous. We emphasize again that this probing of the underlying goal of the decree is necessary before the decree is dissolved because ... here the specific terms of the decree were not achieved by the deadline in the agreement and allegations of non-compliance have been raised.... *[T]he district court must look beyond the numerical term to the goal which that hiring requirement was designed to achieve. In deciding whether to close the case and dissolve the decree in its entirety, the district court must similarly consider the goal of negating any inferences of lawful discrimination in the recruitment, testing, and promotion of minorities in these areas, no specific numerical terms were established by the consent decree.*
> *Before the district court dissolves the decree, it must determine that the goals of the consent decree have been achieved and must consider all objections to such dissolution.*

*Id.* at 961 (emphasis added).

In light of the guidance given by the *Youngblood* Court, we agree with the City and Intervenors that the district court erroneously terminated the 18% hiring goal of the consent decree. The ostensibly "limited" district court order has far reaching consequences for the effectiveness of the remainder of the decree's provisions. Indeed, laying aside the possibility that the decree's hiring goal warrants modification, the stated hiring goal directly impacts the promotional goals within the decree. Without a commitment to hiring a sufficient number of minority applicants, the pool of minority hirees from which the department could draw commanders and other supervisors will be diminished. The essence of paragraph 27, "to achieve a goal of work force composition which negates any inference of an unlawfully discriminatory promotion policy based on race," would undoubtedly be undermined by the court order and may open the City to further litigation. We find that the numerical goals in paragraph 22, to which the parties to the Consent decree agreed, are the lynchpin for accomplishing the overall objectives of the decree, and those goals cannot be dissolved lightly and without due consideration as to how the other provisions of the decree will remain effective.

 Moreover, the *Youngblood* Court specifically stated that the consent decree must remain in effect until all of the objections to its dissolution have been considered and resolved. *See Youngblood,* 925

F.2d at 961. The Intervenors have asserted discrimination actions based on the City's hiring practices during the relevant period. *See Jansen v. City of Cincinnati,* 904 F.2d 336 (1990) (granting black firefighters the right to intervene). By neglecting these claims of discrimination, the district court has erroneously failed to determine "whether the vestiges of past discrimination had (indeed) been eliminated to the extent practicable." *See Board of Educ. of Oklahoma City Public Schools v. Dowell,* 498 U.S. ——, ——, 111 S.Ct. 630, 638, 112 L.Ed.2d 715 (1991). The dissolution of the 18% hiring goal without addressing the Intervenors complaints is contrary to both the Supreme Court's overarching principle for evaluating consent decrees announced in *Dowell* and this Court's clear mandate in *Youngblood.*

### III.

While we recognize that a consent decree operating in perpetuity may not be the most effective way to eradicate the evils of discrimination in the municipal workplace, we must remain true to the wording and intent of such decrees, until their goals are met. As a footnote, we also observe that the consent decree specifically provides for its own dissolution upon a proper motion by the defendant parties to the decree and that the City has not yet moved the court for dissolution of any portion of the decree. Given the intrinsic bond between the hiring and promotion goals of the consent decree and the district court's failure to address the Intervenor's claims with regard to the City's recent hiring practices, we must VACATE the district court's order and REMAND the case to the district court for proceedings consistent with this opinion.[2]

---

**2.** In light of the disposition of this case, this Court makes no determination as to the relief granted to the plaintiffs by the district court.