Teresa E. SALTER, Plaintiff,

v.

DOUGLAS MacARTHUR STATE
TECHNICAL COLLEGE,
Defendant.

Civil Action No. 95–T–1227–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 11, 1996.

Banks Thomas Smith, Hall & Smith, Dothan, AL, for plaintiff.

William Harold Albritton, IV, Albrittons, Givhan, Clifton & Alverson, Andalusia, AL, for defendant.

*ORDER*

MYRON H. THOMPSON, Chief Judge.

Plaintiff Teresa A. Salter, who is white, alleges that defendant Douglas MacArthur State Technical College, also known as MacArthur Tech, refused to hire her as an instructor in secretarial technology because of her race. Salter claims that MacArthur Tech violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17 (West 1994), and a consent decree resolving class-wide claims of race discrimination entered by this court in *Shuford v. Alabama State Board of Education,* 846 F.Supp. 1511 (M.D.Ala.1994), also known as *Shuford I.*[1] The lawsuit is now before the court on Salter's motion for partial summary judgment. For the reasons that follow, the motion will be granted in part and denied in part.

## I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

The facts in the light most favorable to non-movant MacArthur Tech are as follows.

---

1. In *Shuford v. Alabama State Bd. of Educ.,* 897 F.Supp. 1535 (M.D.Ala.1995), also known as *Shuford II,* this court approved a second consent decree resolving discrimination claims brought by women.

The college is part of the Alabama Postsecondary Educational System, which has been the subject of a long-running class-action lawsuit claiming race and sex discrimination in its employment practices. In *Shuford I*, this court approved a consent decree resolving the race-discrimination claims in this case.

Near the end of 1993, Raymond Chisum, President of MacArthur Tech, became aware that the college's instructor in secretarial technology would be retiring at the end of the 1994 school year.[2] In the spring of 1994, the college began the process of searching for a replacement.[3] It advertised the position as requiring a master's degree, a minimum of 18 graduate-semester hours in business teacher education, and a minimum of three years of successful teaching experience.[4] The college's recruitment-and-selection committee selected three applicants, all of whom were white, to be interviewed by Chisum.[5]

Chisum was aware that the parties in the *Shuford I* litigation were close to agreeing upon a consent decree that would establish goals for hiring minority faculty and staff at institutions in the postsecondary system. At that time, MacArthur Tech did not have any black faculty, and Chisum wanted to comply with *Shuford I* in hiring a new instructor for the position.[6] On March 15, 1996, the court approved the consent decree in *Shuford I*,

and a copy was sent by Chancellor of Postsecondary Education Fred Gainous to MacArthur Tech on March 16, 1996.[7] However, in attempting to comply with *Shuford I*, Chisum was not following the final version of the decree. Instead, he was using a draft of the consent decree that had been issued in November of 1995.[8] Paragraph C(7)(c) of the draft decree gave college presidents wide latitude in the hiring of black candidates and stated that, "Should the president conclude, in his or her discretion, that a good-faith effort to comply with the remedial objectives of this decree, including but not limited to meeting the minority goals set out herein, necessitates such action, the president may employ a Black person to fill a vacancy without utilizing the solicitation, hiring, and selection criteria and procedures mandated by this decree." [9] The provision further provided that, "This discretion shall include the right to use part of the criteria and procedures without using all of them, and specifically, but without limitation, shall authorize the president to employ a Black person without the recommendation of a recruitment and selection committee." [10] Chisum was not aware that ¶ C(7)(c) had been deleted and was not included in the final decree entered by the court.[11]

Relying on this language in ¶ C(7)(c), Chisum made an independent effort to contact a

---

2. Chisum deposition at 16, attached to defendant's brief filed on April 1, 1996.

3. *Id.* at 17–18.

4. Chisum deposition (plaintiff's exhibits 4 & 5), attached to defendant's brief filed on April 1, 1996.

5. Chisum deposition at 51, attached to defendant's brief filed on April 1, 1996.

6. *Id.* at 44–45.

7. Chisum deposition (plaintiff's exhibit 1), attached to defendant's brief filed on April 1, 1996.

8. Chisum deposition at 29, 39, 92–93, attached to defendant's brief filed on April 1, 1996.

9. Chisum deposition (plaintiff's exhibit 3 at 17–18), attached to defendant's brief filed on April 1, 1996.

10. *Id.*

11. Chisum deposition at 51, 75, 80, attached to defendant's brief filed on April 1, 1996. *See also Shuford I*, 846 F.Supp. at 1516 n. 9 ("A provision in the original version of the decree would have also given college presidents the unlimited authority to go outside the selection process at any time to employ an African–American. After the court expressed concern about this provision at one of the fairness hearings, the parties submitted a revised decree on February 16, 1994, that does not include this provision, and it is this revised decree that is currently under the court's consideration").

number of universities in the state to try and find black applicants.[12] Auburn University referred him to Tammye Harris, a black woman, whom he asked to apply for the position.[13] Harris submitted her resume to Chisum on the last day for accepting applications.[14] Her resume showed that she was just completing her undergraduate program and did not have any teaching experience.[15] After reviewing her resume, Chisum asked Harris to come to the campus for an interview and asked the recruitment-and-selection committee to meet with her as a courtesy to him.[16] After interviewing Harris and speaking with her faculty advisers, Chisum decided to offer the position to Harris, and she was hired in June of 1994.[17]

Chisum acknowledges that the hiring of Harris deviated from usual hiring practices at MacArthur Tech in that she did not have the advertised qualifications for the job—she lacked a master's degree and had no in-field experience—and was not initially screened by the recruitment-and-selection committee.[18] However, Chisum stated that Harris met the minimum qualifications for the position and that the advertised qualifications were just an institutional preference.[19] In addition, Chisum incorrectly believed at the time he hired Harris that ¶ C(7)(c) of the draft consent decree had been included in the final decree and that "it gave [him] the authority to step outside the normal search and selection procedures and to hire a qualified black person, and a black female in particular."[20] Chisum further admits that, in the absence of ¶ C(7)(c), he "probably" would not have hired Harris.[21]

Salter is one of the three white candidates who had been selected by the recruitment-and-selection committee to be interviewed by Chisum. Salter had a master's degree and 12 years of teaching experience.[22] In August of 1994, Salter contacted the Alabama Education Association, which sent a representative to MacArthur Tech to request documentation on the hiring of Harris.[23] Chisum was then asked to come to Montgomery to meet with Chancellor Gainous, and one of the Association's high-ranking officials, Joe Reed.[24] Reed suggested that Chisum vacate the position and readvertise it so that MacArthur Tech could hire the best qualified person.[25] Chisum agreed at that meeting to re-advertise the position.[26]

On September 23, 1994, Salter filed a complaint with the United States Equal Employment Opportunity Commission.[27] In early October, MacArthur Tech re-advertised the position, and Salter reapplied in a letter dated October 7, 1994.[28] In a letter dated December 23, 1994, to the Commission mediator, Salter's attorney made an offer for a monetary settlement and stated that Salter was no longer interested in the position at MacArthur Tech because she had obtained

**12.** Chisum deposition at 44–46, attached to defendant's brief filed on April 1, 1996.

**13.** *Id.* at 45–48.

**14.** *Id.* at 47–48.

**15.** *Id.* at 50.

**16.** *Id.* at 52, 144–145.

**17.** *Id.* at 66, 115–116.

**18.** *Id.* at 50.

**19.** *Id.* at 25–29, 54.

**20.** *Id.* at 75; *see also id.* at 51, 80.

**21.** *Id.* at 75.

**22.** *Id.* at 90.

**23.** *Id.* at 95.

**24.** *Id.* at 95–96.

**25.** *Id.* at 98–99.

**26.** *Id.*

**27.** Exhibit E to defendant's brief filed on April 1, 1996.

**28.** Exhibit D to defendant's brief filed on April 1, 1996.

employment elsewhere.[29] However, without agreeing to the monetary part of the offer, Chisum then discontinued the search process, and the position has never been vacated.[30] Salter filed this lawsuit after receiving her right-to-sue letter from the Commission.

## III. DISCUSSION

Salter claims that MacArthur Tech hired Harris merely because she is black, in violation of Title VII and the consent decree entered by this court in *Shuford I*. She contends that she is entitled to summary judgment on the issue of liability and that "the only issue at trial ... should be the amount of damages ... including compensatory damages, equitable relief, and attorneys fees and costs."[31] The court agrees only in part with Salter.

### A. *Title VII claim*

#### 1.

Title VII provides that, "It shall be an unlawful employment practice for an employer ... to discharge any individual[ ] or otherwise to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e–2(a) (West 1994). "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice ..., the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e–5(g)(1) (West 1994). In 1991, Title VII was amended to expand the available remedies. The 1991 amendments provide, in relevant part, that, "In an action brought by a complaining party ... against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages ...,  in addition to any relief authorized by [42 U.S.C.A. § 2000e–5(g) ], from the respondent." 42 U.S.C.A. § 1981a(a)(1) (West 1994).

■ The 1991 amendments further clarified or redefined when liability attaches under Title VII. The amendments provide that "an unlawful employment practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e–2(m) (West 1994). In addition, the 1991 amendments provide that, "On a claim in which an individual proves a violation ... and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court ... (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) ...; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment." 42 U.S.C.A. § 2000e–5(g)(2)(B) (West 1994). Thus, under these amendments, if the employee shows merely that race was a motivating factor, she has established liability and thus may be entitled to some relief. Whether the employer has met its "same action" burden of proof would go to the nature of the relief available.[32]

■ In order for an employee to be entitled to full relief, the court would have to

---

**29.** Exhibit F to defendant's brief filed on April 1, 1996; *see also* Chisum deposition at 106–08, 153–54, attached to defendant's brief filed on April 1, 1996.

**30.** *Id.* at 106–08.

**31.** Plaintiff's brief at 16, filed on March 1, 1996.

**32.** This understanding of the 1991 amendments is confirmed by their legislative history. This history indicates that the purpose of the amendments was to overrule partially that part of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which exempted employers from liability and precluded any Title VII remedy if they could produce evidence and persuade the court that an adverse employment decision would still have been made in the absence of a discriminatory motive. The House Report states:

find: first, that the employee has established that race was a motivating factor for a decision by the employer, even though other factors also motivated the employer; and, second, that the employer has failed to establish that it would have taken the same adverse employment action against the employee even in the absence of the impermissible factor. However, if the only fact proved by the employee is that race was a motivating factor, the employee has still established liability and may be entitled to limited relief, including declaratory relief, some injunctive relief, and attorney's fees and costs.

### 2.

Salter claims that she is entitled to summary judgment based on the circumstantial evidence before the court. The court agrees to the extent that Salter is entitled to summary judgment on the first factor under Title VII, that is, that race was a motivating factor in Chisum's decision. The court cannot agree with Salter, however, that "the only

issue at trial ... should be the amount of damages ... including compensatory damages, equitable relief, and attorneys fees and costs."[33] Salter is not entitled to summary judgment on the second factor under Title VII, that is, whether the employer has failed to establish that it would have taken the same adverse employment action against the employee even in the absence of the impermissible factor. Under Title VII, Salter would be entitled to damages and full injunctive relief only if she prevailed on this second factor, and the evidence is in dispute as to this factor.

■ In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases" based on circumstantial evidence. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407

"When Congress enacted the Civil Rights Act of 1964, it precluded all invidious consideration of a person's race, color, religion, sex or national origin in employment. The effectiveness of Title VII's ban on discrimination on the basis of race, color, religion, sex or national origin has been severely undercut by the recent Supreme Court decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In that case, the Supreme Court concluded that "when a plaintiff ... proves that her gender played a motivating part in an employment decision, *the defendant may avoid a finding of liability* ... by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." Id. at 258, 109 S.Ct. at 1795 (emphasis added).

\* \* \* \* \* \*

"To establish liability under proposed Subsection 703(1), the complaining party must demonstrate that discrimination *actually contributed* or was otherwise *a factor in* an employment decision or *action.* Thus, in providing liability for discrimination that is a *"contributing factor,"* the Committee intends to restore the rule applied in many federal circuits prior to the *Price Waterhouse* decision that an employer may be held liable for any discrimination that

is actually shown to play a role in a contested employment decision.
"Section 203 of the bill also amends Subsection 706(g) of Title VII to make clear that where a violation is established under Subsection 703(1), and where the employer establishes that it would have taken the same action in the absence of any discrimination, a court may not order the employer to hire, reinstate, promote or provide back pay to the complainant. This provision is consistent with the current text of Title VII, which provides that "no order of the court shall require the admission or reinstatement of an individual ... if such individual ... was refused employment ... for any reason other than discrimination." 42 U.S.C. § 2000e–5(g).

\* \* \* \* \* \*

"However, the presence of a contributing discriminatory factor would still establish a Title VII violation, and a court could order other appropriate relief, including injunctive or declaratory relief, compensatory and punitive damages where appropriate, and attorney's fees."
H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 45, 48–49, *reprinted in,* 1991 U.S.C.C.A.N. 549, 583, 586–87 (emphasis in original) (footnotes omitted).

**33.** Plaintiff's brief at 16, filed on March 1, 1996.

(1993).[34] Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a prima facie case of unlawful race discrimination by a preponderance of evidence. 411 U.S. at 802, 93 S.Ct. at 1824. A "prima facie case" requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). The traditional framework for a failure-to-hire case requires that the plaintiff show that (1) she belongs to a protected class; (2) that she applied for a job for which she was qualified and for which the employer was seeking applicants; (3) that she was rejected; and (4) that after her rejection, the employer sought applications from individuals of similar or less qualifications outside the protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ If the plaintiff establishes a prima facie case, the burden then shifts to the employer to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the plaintiff. This may be done by the employer articulating a legitimate, non-discriminatory reason for the employment decision, which is clear, reasonably specific and worthy of credence. The employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–55, 258, 101 S.Ct. 1089, 1093–94, 1096, 67 L.Ed.2d 207 (1981). "If the trier of fact finds that the elements of the prima facie case are supported by a preponderance of the evidence and the employer remains silent, the court must enter judgment for the plaintiff." *O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S.

——, ——, 116 S.Ct. 1307, 1309, 134 L.Ed.2d 433 (1996).

■ Once the employer satisfies this burden of production, the plaintiff then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for discrimination. The plaintiff may satisfy this burden either directly by persuading the court that a discriminatory reason more than likely motivated the employer or indirectly by persuading the court that the proffered reason for the employment decision is not worthy of belief. By so persuading the court, the plaintiff satisfies her ultimate burden of demonstrating by a preponderance of the evidence that she has been the victim of unlawful discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. However, because the *McDonnell Douglas* analysis is only a "procedural device," *St. Mary's Honor Center*, 509 U.S. at 521–23, 113 S.Ct. at 2755, it should not be applied too rigidly; nor should it be viewed as an end in itself. For example, the mere disbelief of the employer's proffered reason does not "compel" a finding of discrimination. *Id.* at 510–511, 113 S.Ct. at 2749. In other words, the *McDonnell Douglas* approach should not be used by the court as a "substitute" for reaching the ultimate issue of whether the employee has, in fact, been a victim of discrimination. *Moore v. Alabama State University*, 864 F.2d 103, 105 (11th Cir.1989).

■ Salter has established a prima facie case: she is white, she applied for a position, she was rejected for the position, and a black candidate of similar or less qualifications was selected for the position. By establishing a prima facie case, she has created an inference that the employment decision was motivated, at least in part, by race. *Teamsters*, 431 U.S. at 358, 97 S.Ct. at 1866. The only reason proffered by MacArthur Tech is that Salter would not have received the position even if Harris had not been hired because

---

**34.** Because Salter does not claim there is any "direct evidence" of discrimination against her, see *Haynes v. W.C. Caye & Company, Inc.*, 52 F.3d 928, 930 (11th Cir.1995); *Clark v. Coats and*  *Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir.1993), the court will examine her Title VII claim only under the *McDonnell Douglas* framework.

Salter was Chisum's third choice from among the white candidates.[35] This reason, however, is not responsive to the first factor under Title VII—whether race a motivating factor in Chisum's hiring decision. Essentially, Salter has presented evidence reflecting that she was impermissibly denied the opportunity "to compete on an equal footing" with Harris because of race. *Northeastern Florida Contractors v. Jacksonville,* 508 U.S. 656, 665–67, 113 S.Ct. 2297, 2303, 124 L.Ed.2d 586 (1993). Salter has raised the inference that race was a motivating factor in the sense that Chisum selected Harris and failed to consider any of the three white applicants for a racial reason. If true, this would violate Title VII. *Cf. also id.* ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit"); *Turner v. Fouche,* 396 U.S. 346, 362, 90 S.Ct. 532, 541, 24 L.Ed.2d 567 (1970) ("We may assume that the [plaintiffs] have no right to be appointed to the ... board of education. But [they] do have a federal constitutional right to be *considered* for public service without the burden of invidiously discriminatory disqualifications") (footnote omitted) (emphasis added); *Richmond v. J.A. Croson Co.,* 488 U.S. 469, 493, 109 S.Ct. 706, 720, 102 L.Ed.2d 854 (1989) (opinion of O'Connor, J.) ("The [set-aside program] denies certain citizens the *opportunity to compete* for a fixed percentage of public contracts based solely upon their race") (emphasis added).

■ MacArthur Tech has offered nothing to defeat this inference. The college's response—that Salter would not have received the position any way—goes to step two of the Title VII analysis, that is, to whether Salter can receive full rather than partial relief. It goes to whether Salter can show that she was better qualified than the other two white candidate or whether she can show that, even if she was Chisum's last choice from among the three white candidates, she still would

have received the position because the other two candidates were no longer interested in it. Because the college has failed to produce a legitimate, non-discriminatory reason for its employment decision—that is, why it went outside the neutral selection procedures to hire Harris—the court is required to enter judgment for Salter on the first-factor issue of liability under Title VII. As stated, "[i]f the trier of fact finds that the elements of the prima facie case are supported by a preponderance of the evidence and the employer remains silent, the court must enter judgment for the plaintiff." *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1309.

■ In any event, even if the court were to go directly to the issue of whether Salter is entitled to summary judgment on her ultimate burden of demonstrating that she has been the victim of unlawful discrimination, the conclusion would be the same. Salter has presented circumstantial evidence from which a reasonable factfinder could reach only one conclusion: that race was a factor in Chisum's decision to hire Harris and not even give fair consideration to the three white candidates, including Salter. First, Harris was far less qualified than the three white candidates recommended by the recruitment-and-selection committee to be interviewed by Chisum. The advertisement for the position required a master's degree and three years of teaching experience. The three white candidates all had master's degrees, while Harris had just a bachelor's degree. Harris had no teaching experience. In contrast, Salter had 12 years of teaching experience, ten of which were in-field. Another white candidate had 19 years of teaching experience, 14 of them in-field. The third white candidate had 14 years of experience in-field, part of it as a teacher and part as a vocational counselor.[36] Aside from experience and credentials, Harris had markedly inferior grades to Salter. In his deposition, Chisum acknowledged that Harris's transcript indicated that she had received grades

---

**35.** Defendants brief at 10, filed on April 1, 1996.

**36.** Chisum deposition at 90, attached to defendant's brief filed on April 1, 1996.

of "D" in eleven undergraduate courses.[37] Two of those courses were Written Business Communications and Business Law I, which Chisum stated are core in-field courses that would be required for an instructor of secretarial technology.[38] In contrast, a review of Salter's transcript shows that she has never received a "D." [39] She received three "C's" as an undergraduate but received "A's" and "B's" in all other undergraduate and graduate level courses.[40]

In addition to the fact that Harris was less qualified, Chisum acknowledges that he was interested in hiring a black faculty member because MacArthur Tech had no black faculty, and he wanted to comply with the consent decree in *Shuford,* which he understood would contain goals for hiring black faculty.[41] Chisum acknowledges that he deviated from normal hiring procedures in interviewing Harris because he was following ¶ C(7)(c) of the draft consent decree, which authorized him to do so in the hiring of black candidates.[42] Chisum was not aware that ¶ C(7)(c) was later deleted from the proposed consent decree and was not included in the final decree entered by the court before the hiring of Harris.[43] And Chisum acknowledges that, in the absence of ¶ C(7)(c), he "probably" would not have hired Harris.[44] Admittedly, Chisum denies that race was a factor in his decision to hire Harris.[45] However, because Harris was the least qualified candidate, because Chisum acknowledges that he was looking for a black candidate, because Chisum acknowledges that he deviated from normal hiring procedures, and because Chisum acknowledges that otherwise he probably would not have hired Harris, a reasonable factfinder could come to only one conclusion: that race was a factor in Chisum's decision to hire Harris.

The court cannot, however, reach a similar conclusion on the second factor under Title VII, that is, whether MacArthur Tech has failed to establish that Chisum would have taken the same adverse employment action against Salter even in the absence of the impermissible factor. Chisum testified that, of the three white candidates, Salter "would not have been the first one I would have offered the job to." [46] The evidence is therefore in dispute as whether Salter would have been Chisum's choice even if he had not hired Harris. In addition, for this reason, the court cannot conclude that Salter is entitled to damages and full injunctive relief under Title VII.

3.

MacArthur Tech contends that the non-discrimination provisions of Title VII do not apply to this case because Harris was hired in accordance with a voluntary affirmative-action plan. As stated, Title VII prohibits consideration of race in employment decisions. 42 U.S.C.A. § 2000e–2 (West 1994). However, the Supreme Court has held that employers may consider race in hiring when

37. *Id.* at 65.

38. *Id.* at 63.

39. Exhibit 6 to plaintiff's motion for partial summary judgment, filed on March 1, 1996.

40. *Id.*

41. Defendant's brief at 3–4, filed on April 1, 1996.

42. *Id.* at 5.

43. Chisum deposition at 29, 39, attached to defendant's brief filed on April 1, 1996.

44. *Id.* at 75.

45. In Chisum's deposition, the following exchange took place on this issue:

"Q. Was [Harris's] race a primary reason that she was hired over those other applicants?
A. For my decision?
Q. Yes, sir.
A. No.
Q. Was race a consideration in your decision to hire Tammye Harris over these three other women?
A. No."
Chisum deposition at 73, attached to defendant's brief filed on April 1, 1996.

46. *Id.* at 151.

following a voluntary affirmative action plan. *See United Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). The Court has stated that "Congress intended for voluntary compliance to be the preferred means of achieving the objectives of Title VII," and it "is equally clear that voluntary action available to employers and unions seeking to eradicate race discrimination may include reasonable race-conscious relief that benefit individuals who were not actual victims of discrimination." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 515, 516, 106 S.Ct. 3063, 3071, 3072, 92 L.Ed.2d 405 (1986).

In this case, the consent decree in *Shuford I* was voluntary in that it constitutes a plan developed by the parties to avoid litigation. However, for Title VII purposes, MacArthur Tech did not act pursuant to that decree. As the school admits, Chisum relied upon ¶ C(7)(c) which was *not* included in the decree. Moreover, the decree states that it "shall not be construed to require the Defendants or any of the colleges to hire or promote any person, regardless of race, who is not qualified for the position in question, or to preclude them from hiring or promoting the best qualified applicant regardless of race." 846 F.Supp. at 1535 (quoting the decree). MacArthur Tech cannot use the *Shuford* decree as a shield against Salter's claim of a violation of Title VII.

### 4.

■ MacArthur Tech contends that, even if it violated Title VII, this court should not hold the school liable because the violation resulted from a good-faith attempt to comply with the *Shuford I* decree. Good faith is not a defense to illegal consideration of race in an employment decision. As this court has previously held, consideration of race or sex in hiring, even if it is benign, is not allowed under Title VII or the fourteenth amendment. *Hicks v. Dothan City Bd. of Educ.,* 814 F.Supp. 1044, 1048 (M.D.Ala.1993). This court has specifically extended the holding in *Hicks* to good-faith attempts to comply with a consent decree. *See Sims v. Montgomery*

*County Com'n,* 873 F.Supp. 585, 597–598 (M.D.Ala.1994). Therefore, even if consideration of race in the decision to hire Harris was done in good faith, it still constitutes a violation of Title VII.

### B. *Shuford I decree claim*

■ As stated, Salter also claims that MacArthur Tech violated the consent decree in *Shuford I.* In her brief filed on March 1, 1996, at 12–13, she bases this claim on the following portions of the decree:

"2. Defendants shall adopt the following as a written policy of the Alabama State Board of Education and the System of Postsecondary Education:

a. that no employee or applicant for employment or promotion, including applicants for presidential, full-time faculty and other administrative and supervisory positions, shall be discriminated against on the basis of any impermissible criterion or characteristic including without limitation race, sex, or age and, to ensure this policy is effectuated in a manner which advances the purposes and goals of this decree.

\* \* \* \* \* \*

"3. Job Descriptions

a. Prior to the announcement of any vacancy in a faculty or staff position, the college shall develop a complete and accurate job description for the position, which shall contain at least the following:

(1) duties and responsibilities of the job;

(2) required education and work experience;

(3) required license, certification or other credentials; and

(4) all other special qualifications or requirements of the job.

b. Every job description shall be reviewed and appropriate revisions made at least annually by responsible supervisors."

846 F.Supp. at 1533, 1537 (quoting the decree). Salter seeks to have the court inter-

pret these provisions to prohibit the method Chisum used in hiring Harris. These provisions may or may not prohibit what Chisum did. However, because Salter was not a party to the consent decree, she does not have standing to seek affirmative relief under the decree, that is, to have the decree enforced according to her interpretation. She only has standing to challenge the legality of the decree itself, to the degree that it affects her.

This court faced a similar claim in *Sims v. Montgomery County Commission.* In that case, this court ruled that a group of white sheriff's deputies did not have standing to challenge the interpretation of a consent decree to which they were never parties. The white deputies argued that by promoting three black deputies, the Montgomery County Sheriff's Department had exceeded the scope of a consent decree it entered to resolve claims of employment discrimination brought by classes of blacks and women. 873 F.Supp. at 592–593. This court ruled that a consent decree is a contract between parties in a lawsuit to avoid litigation, and therefore its interpretation cannot be challenged by non-parties to the suit. *Id.* at 598–99. In doing so, this court relied on two Sixth Circuit cases holding that persons who were not parties to a consent decree lacked standing to enforce the decree according to their own interpretation of it. In *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.), *cert. denied,* 506 U.S. 827, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992), the City of Cincinnati developed an affirmative action hiring policy pursuant to a consent decree. Vogel, a white male police officer, subsequently brought suit against the city, arguing that the city's police department went beyond the consent decree in administering its hiring policy. Vogel argued that the city had implemented a "quota system" by hiring a predetermined percentage of blacks in violation of the consent decree. The Sixth Circuit stated: "In contending that the City had gone beyond the scope of the consent decree in administering its affirmative hiring policy, Vogel, who was not a party to the consent decree, seeks collaterally to enforce it according to his own

interpretation of it. We hold that Vogel lacks standing to assert such a claim." 959 F.2d at 598. The court explained that a consent decree, although in effect a final judgment, is a contract founded on the agreement of the parties. *Id.* The decree should be construed to preserve the position for which the parties, and not others, bargained. *Id.* The decree "represents a compromise between parties who have waived their right to litigation and, in the interest of avoiding the risk and expense of suit, have giv[en] up something they might have won had they proceeded with the litigation." *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Accordingly, a consent decree "is not enforceable directly or in collateral proceedings by those who are not parties to it." *Vogel,* 959 F.2d at 598 (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917, 1933, 44 L.Ed.2d 539 (1975)). It "may be challenged only on the ground that its substantive provisions unlawfully infringed upon the rights of the complainant." *Id.* (quoting *Vanguards of Cleveland v. City of Cleveland,* 753 F.2d 479, 484 (6th Cir.1985), *aff'd* 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986)). Thus, the court held that Vogel did not have standing to challenge the decree according to his interpretation of it but could claim that the decree as it applied to him violated the fourteenth amendment to the United States Constitution. Similarly, in *Jansen v. City of Cincinnati,* 977 F.2d 238 (6th Cir.), *cert. denied,* 508 U.S. 911, 113 S.Ct. 2344, 124 L.Ed.2d 254 (1993), white applicants for the city's fire department claimed that the implementation of separate hiring lists by race was not authorized by a consent decree and involved the use of impermissible quotas. As in *Vogel,* the appellate court held that the plaintiffs lacked standing to challenge the city's interpretation of the consent decree and to have the decree interpreted upon their own terms. The court stated that the plaintiffs' challenge must be limited to the constitutionality of the decree as it applied to them. *Id.* at 242.

In *Shuford I,* the parties to the consent decree were a class of black plaintiffs, the

Alabama State Board of Education and its individual board members, and the Chancellor of Postsecondary Education. Thus, based on the holdings in *Sims, Vogel,* and *Jansen,* this court concludes that, because Salter was not a party to the consent decree in *Shuford I,* she does not have standing to claim that MacArthur Tech violated the consent decree.

For the foregoing reasons, it is ORDERED as follows:

(1) The motion for partial summary judgment on liability, filed by plaintiff Teresa Salter on March 1, 1996, is granted in part and denied in part;

(2) The motion is granted to the extent that it is DECLARED that race—the fact that plaintiff Salter is white—was an impermissible "motivating factor" in the decision by defendant Douglas MacArthur State Technical College not to hire plaintiff Salter, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17 (West 1994);

(3) The motion is denied to the extent that there is a factual dispute as to whether defendant Douglas MacArthur State Technical College would have taken the same adverse employment action against plaintiff Salter even in the absence of the impermissible factor; and

(4) The motion is denied to the extent that plaintiff Salter claims that defendant Douglas MacArthur State Technical College violated certain provisions in the consent decree resolving class-wide claims of race discrimination entered by this court in *Shuford v. Alabama State Board of Education,* 846 F.Supp. 1511 (M.D.Ala.1994).

DONE.