Jennifer GRATZ and Patrick Hamacher, Plaintiffs,

v.

Lee BOLLINGER, James J. Duderstadt, The University of Michigan, and The University of Michigan College of Literature, Arts, and Science, Defendants,

and

Ebony Patterson, Ruben Martinez, Laurent Crenshaw, Karla R. Williams, Larry Brown, Tiffany Hall, Kristen M.J. Harris, Michael Smith, Khyla Craine, Nyah Carmichael, Shanna Dubose, Ebony Davis, Nicole Brewer, Karla Harlin, Brian Harris, Katrina Gipson, Candace B. N. Reynolds, by and through their parents or guardians, Denise Patterson, Moises Martinez, Larry Crenshaw, Harry J. Williams, Patricia Swan–Brown, Karen A. McDonald, Linda A. Harris, Deanna A. Smith, Alice Brennan, Ivy Rene Carmichael, Sarah L. Dubose, Inger Davis, Barbara Dawson, Roy D. Harlin, Wyatt G. Harris, George C. Gipson, Shawn R. Reynolds, and Citizens for Affirmative Action's Preservation, Proposed Defendant–Intervenors. Defendant.

No. 97–CV–75231–DT.

United States District Court, E.D. Michigan, Southern Division.

July 7, 1998.

D-all Wilmer, Cutler & Pickering, by John Payton & Jane Sherburne, Washington, DC, Butzel Long, by Leonard M. Niehoff, Ann Arbor, MI, for defendants.

Godfrey J. Dillard, Milton R. Henry, Reginald M. Turner, Jr., Citizens for Affirmative Action's Preservation, Detroit, MI, Elaine R. Jones, Director–Counsel, Theodore M. Shaw, New York City, Christopher A. Hansen, Steven R., Shapiro & Deborah N. Archer, New York City, Brent E. Simmons, Lansing, MI, Michael J. Steinberg, Detroit, MI, Patricia Mendoza, Mexican American Legal Defense & Educational Fund, Chicago, IL, for Proposed Intervening Defendants.

## *OPINION*

DUGGAN, District Judge.

This matter is currently before the Court on proposed defendant-intervenors ("proposed intervenors") motion to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2), and in the alternative, for permission to intervene pursuant to Fed.R.Civ.P. 24(b)(2). Plaintiffs have filed a response in opposition to the motion contending that the proposed intervenors have failed to meet the requirements of intervention of right, and alternatively, that the Court should decline to exercise its discretion and permit intervention under Fed. R.Civ.P. 24(b)(2).[1]

On October 14, 1997, plaintiffs filed a complaint against Lee Bollinger, James J. Duderstadt, The University of Michigan, and The University of Michigan College of Literature, Arts, and Science (collectively "University") alleging that the University's admissions policy impermissibly utilizes race as a factor in determining admissions in violation 42 U.S.C. §§ 1981 and 1983, and in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution. The present motion seeks intervention on behalf of seventeen African–American and Latino individuals, all of whom state that they intend to seek admission to The University of Michigan, and Citizens for Affirmative

Daivd F. Herr, Kirk Kolbo, Maslon, Edelman, Borman & Brand, Minneapolis MN, Michael E. Rosman, Michael P. McDonald, Hans F. Bader, Washington, DC, for plaintiffs.

---

1. On June 5, 1998, proposed intervenors filed a motion requesting oral argument. Pursuant to L.R. 7.1(e)(2), the Court believes the issues are adequately addressed in the briefs and does not believe oral argument is necessary. Accordingly, proposed intervenors' request for oral argument is denied.

Action's Preservation ("CAAP"), a non-profit organization "with the mission of preserving higher educational opportunities for African–American and Latino students in the State of Michigan." (Mot. Int. at 4).

The proposed intervenors assert that they are entitled to intervention of right because they have a direct and substantial interest in an admissions policy that "preserves and broadens access to the University, including ... the University's authority to consider the impact of a student's racial background ..." in determining the propriety of admission. According to the proposed intervenors, a decision in favor of plaintiffs eliminating race as a criteria for admission would substantially impair the proposed intervenors' interest in preserving access to the University on behalf of African–American and Latino students, precipitate a decline in enrollment of African–American and Latino students at the University, and create a potential *stare decisis* effect through a ruling that the University's admissions policy is unconstitutional. Finally, the proposed intervenors argue that their asserted interests cannot be adequately represented by defendants because "the University may be subject to internal and external pressures that temper its ability to protect often-controversial race-conscious admissions programs" and "the University faces less risk of harm than do Applicants if such race-conscious admissions programs are dismantled." (Mot. Int. at 10).

Alternatively, the proposed intervenors seek permission of the Court to intervene pursuant to Fed.R.Civ.P. 24(b)(2) claiming that "[p]roposed intervenors seek to ensure educational access for African–American and Latino students and to maintain a diverse student body." (Mot. Int. at 17).

In contrast, plaintiffs oppose the proposed intervenors' motion for intervention of right on the grounds that the proposed intervenors misapprehend the nature of the "significantly protectable legal interest" contemplated by Fed.R.Civ.P. 24(a)(2) and necessary to entitle one to intervention of right. Plaintiffs claim that the interest upon which the proposed intervenors rely is not a "significantly protectable legal interest" in an admissions poli-

cy that considers race; but, rather, a perceived "entitlement" to racial preference in admissions under the University's present policy. Stated differently, plaintiffs assert that if the University voluntarily ceased the use of race as a factor in admissions decisions, the proposed intervenors could not claim the deprivation of any "legally protected interest," or entitlement to the voluntary use of an affirmative action program in admissions under law. Thus, according to the plaintiffs, the proposed intervenors cannot articulate the existence of a legally protected interest sufficient to afford them intervention of right.

Second, plaintiffs claim that allowing the proposed intervenors to intervene in this lawsuit would expand its scope beyond issues raised in the complaint and answer by not only litigating the constitutionality of the University's present admissions policy, but by also considering the constitutional validity of any future admissions policy of the University that does not consider race as a factor. Plaintiffs also argue that the motion for intervention is premature in that the proposed intervenors are unable to sustain their burden of demonstrating inadequate representation because as the proposed intervenors acknowledge in their motion, "Defendants' cursory response to Plaintiffs' complaint reveals little about Defendants' intended defense of the University's admissions program." (Mot. Int. at 8). Based on this statement, the plaintiffs argue that the proposed intervenors cannot claim inadequate representation when they are unsure of the particular defense which may be mounted by the University.

Finally, plaintiffs argue that the Court should decline to exercise its discretion and sanction permissive intervention because "applicants have no cognizable claim or defense that presents a question of law or fact in common with the original parties." (Pl.'s Resp. at 18). In addition, plaintiffs assert that intervention will unnecessarily "complicate, delay, and prejudice adjudication of this case" in light of the complete absence of factors which would warrant permissive in-

tervention.[2]

### Intervention of Right

■ Fed.R.Civ.P. 24(a) provides in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Court must consider four elements in order to determine whether the proposed intervenors are entitled to intervene as of right: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, (4) inadequate representation of that interest by parties already before the court." *Michigan AFL—CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). The Court will address each of these elements in turn.

### 1. Timeliness

The proposed intervenors filed the motion to intervene on February 5, 1998, approximately four months subsequent to plaintiffs' filing of the original complaint on October 14, 1997. Plaintiffs have not argued that the motion is untimely, and this case is in its initial stages.[3] For these reasons, the Court is satisfied that the motion is timely.

2. In a response to a "motion to intervene" in a related case, *Grutter v. Bollinger*, 16 F.Supp.2d 797 (E.D.Mich.1998) (Friedman, J.), "defendants" asserted that they do not oppose the motion to intervene but, "recognize that the participation of intervenors in this matter and in *Gratz v. Bollinger*, which is the subject of a motion pending before Judge Duggan, could significantly complicate discovery and possibly other aspects of these cases." (Df.'s Resp. to. Mot. Int. at 1).

3. The Court makes this statement with the acknowledgment of plaintiffs' argument that the proposed intervenors' motion is premature with respect to plaintiffs' contention that the proposed intervenors cannot establish inadequacy of representation of the proposed intervenors' interest by

### 2. Substantial Legal Interest

■ The proposed intervenors bear the burden of establishing that they have a substantial legal interest in the subject matter of this litigation. *Miller*, 103 F.3d at 1245; *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir.1990). The Sixth Circuit has "opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Id.* (citing *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir.1991) and *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)). "We have [the Sixth Circuit] for example, noted that an intervenor need not have the same standing necessary to initiate a lawsuit, *Purnell*, 925 F.2d at 948, and cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.' " *Id.* (citations omitted). However, the Sixth Circuit cautioned, "The inquiry into the substantiality of the claimed interest is necessarily fact specific." *Id.*

■ Relying on the Sixth Circuit's decisions in *Miller*, *supra*, and *Jansen*, *supra*, and the Eleventh Circuit's decision in *In re Birmingham Reverse Employment Litigation*, 833 F.2d 1492 (11th Cir.1987), the proposed intervenors claim that courts sanction intervention when the interests of minority groups in the maintenance of an affirmative action program are threatened. Analogously, the proposed intervenors claim that their interest in the preservation of race as a factor in the University's admissions program is a sufficient "substantial legal interest" to support intervention of right.[4]

defendants. The Court does not read plaintiffs' brief, nor does it believe that the implication of plaintiffs' argument over the prematurity of the proposed intervenors' motion, is aimed at a belief that the proposed intervenors' motion is untimely in the sense of being filed too late in the course of the litigation.

4. In the proposed intervenors' motion and brief in support, the proposed intervenors make no attempt to delineate any distinction among the interests of the student intervenors, and those of the CAAP. CAAP asserts that its organization is premised upon the preservation of "higher educational opportunities for African–American and Latino students in the State of Michigan." CAAP asserts that its membership consists of "individu-

The existence of a "substantial legal interest" on the part of the proposed intervenors is a source of great dispute among the parties at this juncture. The proposed intervenors have articulated this interest as a "direct and significant interest in an admissions policy that preserves and broadens access to the University, including ... the University's authority to consider the impact of a student's racial background ... as a distinct factor in evaluating admissions." (Mot. Int. at 5). According to the proposed intervenors, this interest is more than adequate to support intervention of right under current Sixth Circuit law. Plaintiffs claim the articulated interest in the preservation of the use of race as a factor in admissions is insufficient to demonstrate a "substantial legal interest" because the proposed intervenors cannot claim a legally enforceable right in the continued voluntary use of race as a factor in admissions.

This lawsuit is predicated upon plaintiffs' contention that the University's admission policy is unlawful because it impermissibly utilizes race as a factor in determining admissions. Plaintiffs have not advanced a claim that the policy adversely affects minorities. While the proposed intervenors argue that the elimination or modification of the existing policies may adversely affect minorities, proposed intervenors have not asserted any *right* to have the existing policy continue.

Plaintiffs, in fact, contend that proposed intervenors do not have any right to have existing admissions policies continued. In the absence of such a right, plaintiffs maintain proposed intervenors lack the significant protectable legal interest that is necessary to entitle them to intervention of right.

The Court is persuaded by plaintiffs' position. While proposed intervenors are certainly interested in assuring that the Univer-

sity does not eliminate or modify the existing policies in a way that will adversely affect minorities, such interest does not, in this Court's opinion, rise to the level of a significantly protectable interest.[5]

> The Supreme Court has noted that "[w]hat is obviously meant [by Rule 24(a)(2) ] is a significantly protectable interest." Similarly, this Court has required a "direct, substantial interest" in the litigation which must be "significantly protectable."
>
> However, as with the word "interest," the terms "direct, substantial" and "significantly, protectable" are not well defined.

*Purnell v. City of Akron*, 925 F.2d 941, 947 (6th Cir.1991) (citations omitted).

Proposed intervenors rely on *Jansen, supra*, wherein the Court permitted a class of black applicants and black employees of the Division of Fire of the City of Cincinnati to intervene as defendants in a suit by white firefighters challenging the validity of a consent decree setting goals and time tables for minority hiring. In reaching its decision to permit intervention, the Court applied the reasoning employed by the Eleventh Circuit in *In Re Birmingham Reverse Discrimination Employment Litigation, supra*. This Court, however, believes that both *Jansen* and *In re Birmingham* are distinguishable. In both cases, the Court appeared to give great significance to the fact that the proposed intervenors in each of those cases were parties to a consent decree.

> "The proposed intervenors ... are *parties* to the consent decree challenged in this action ... At stake in this litigation is the proposed intervenors' interest in continuing affirmative action *under the consent decree* .... Therefore, as parties to the consent decree, the proposed intervenors have a significant legal interest in its interpretation."

---

als, some of whom are parents or grandparents of prospective African–American and Latino students in the State of Michigan." (Mot. Int. at ¶ 18). Based on the foregoing assertion, it would appear that the proposed student intervenors and the association share the same "interest" in the preservation of race as a factor in determining admissions. In order to facilitate the discussion, for the purposes of this motion, the Court will discuss the interests of both groups together.

**5.** · To the extent that the proposed intervenors have an interest in assuring that the Court does not determine the existing policies to be unlawful, this interest is substantially similar, if not identical, to the interest of the University and, as discussed, *infra*, the Court has no reason to conclude that such interest will not be adequately represented by the present defendants.

*Jansen,* 904 F.2d at 342 (citing *In re Birmingham Reverse Employment Litigation,* 833 F.2d at 1496 n. 13) (emphasis added).

The Eleventh Circuit in *In re Birmingham* stated:

> Because the relief requested by the plaintiffs, if granted, would foreclose future promotions of blacks *under the decrees,* and perhaps result in the demotion of blacks already promoted, the movants urged that they were entitled to intervene as of right under Fed.R.Civ.P. 24(a). The district court denied the motion to intervene under Rule 24(a) but granted it under Rule 24(b) (permissive intervention).[13]

In note 13, the Court stated:

> "In light of our discussion in Part II of this opinion, these individuals were entitled to intervene as of right because they represented the interests of persons whose jobs were directly at stake given the relief sought by the plaintiffs."

833 F.2d at 1496 (emphasis added).

In this Court's opinion, the salient distinction is that the proposed intervenors in *Jansen* and *Birmingham,* had a *right* to intervene because they had a "legally protected interest" conferred upon them by virtue of their status as parties to the consent decree. In this case, proposed intervenors do not have the same "significantly protectable" interest because proposed intervenors do not have any legally enforceable right to have the existing admissions policy continued.[6]

In sum, proposed intervenors' interest in this litigation is not an interest which the Court believes to be a "direct substantial interest" which is "legally protectable."[7]

### 3. Impairment

■ "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Miller,* 103 F.3d at 1247 (citation omitted).

The proposed intervenors argue that a decision in favor of plaintiffs will adversely affect the proposed student intervenors' interests in obtaining admission to the University. In addition, proposed intervenors state that a favorable decision for plaintiffs will substantially reduce the number of African–American and Latino students at the University. Further, the proposed intervenors claim that impairment could also result from a potential *stare decisis* effect that a ruling that the University's admissions program is unconstitutional may have on any attempt by the proposed intervenors to enforce their rights in future litigation over the University's program.

On the issue of impairment of the proposed intervenors' interest, plaintiffs argue that because the proposed intervenors cannot establish a significant legal interest, they cannot show the subsequent impairment of such an interest.

The Court believes that as the proposed intervenors have failed to articulate the existence of a substantial legal interest in the subject matter of the instant litigation, it necessarily follows that the proposed intervenors cannot demonstrate an impairment of any interest. Accordingly, the Court rules that the impairment requirement is not satisfied.

### 4. Inadequate Representation

■ Prospective intervenors have the burden of making a minimal showing that the existing party may inadequately represent his or her interests. *Miller,* 103 F.3d at 1247. The proposed intervenors argue that the defendants are incapable of adequately representing the proposed intervenors' interest because as public actors defendants' "ability to advance the full range of legal justifications for considering race in admis-

---

6. If the University voluntarily decided to cease implementation of its present admissions policy or to modify its present admissions policy, proposed intervenors could not claim any deprivation of a legally protected interest, so long as the policy adopted by the University did not unlawfully discriminate against minorities.

7. In so ruling, the Court does not believe that the proposed intervenors have a right to fully participate in this litigation as "parties." The Court will, however, allow "limited" participation as will be discussed, *infra.*

sion is constrained substantially by other legitimate governmental considerations...." (Mot. Int. at 9).. According to the proposed intervenors, the University may be "subject to internal and external pressures that temper its ability to protect often-controversial race-conscious admissions programs...." *Id.* at 10.

██ Plaintiffs rely on the Fifth Circuit's decision in *Hopwood v. State of Texas,* 21 F.3d 603 (5th Cir.1994), wherein the court denied a motion for intervention on behalf of the Thurgood Marshall Legal Society and the Black Pre–Law Association in a lawsuit challenging the constitutional validity of the University of Texas Law School's affirmative action program. In determining the organizations were not entitled to intervention of right, the Fifth Circuit stated that the proposed intervenors failed to demonstrate that the "state will not strongly defend its affirmative action program." *Id.* at 606. According to plaintiffs, *Hopwood* also establishes that where a governmental agency is the entity whose representation is deemed to be inadequate, "a much stronger showing of inadequacy is required." *Id.* at 605 (citing 7C Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 1909 (1986)). Therefore, plaintiffs contend that under the heightened standard, the proposed intervenors cannot establish that the University will not adequately defend its existing admissions program. Alternatively, plaintiffs make the argument that the proposed intervenors' motion is premature in the sense that the proposed intervenors are unable at this stage of the litigation to ascertain the precise nature of the defendants' defense and therefore, are unable to make any tenable argument with respect to inadequacy of representation when the proposed intervenors are unaware of how the University intends to defend its program.

Existing Sixth Circuit guidance on the adequacy of representation of interest provides, that there is a slight difference in interests between the [proposed intervenors] and the supposed representative does not necessarily show inadequacy, if they both seek the same outcome.... However, interests need not be wholly "adverse" before there is a basis for concluding that existing representation of a "different" interest may be inadequate.

*Jansen,* 904 F.2d at 343 (quoting *Nuesse v. Camp,* 385 F.2d 694, 703 (D.C.Cir.1967)). In addition, the court in *Miller,* in noting the minimal nature of the proposed intervenors' burden at this stage, stated, "[I]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Miller,* 103 F.3d at 1247 (citing *Forest Conservation Council v. United States Forest Serv.,* 66 F.3d 1489 (9th Cir. 1995)).

At this stage of the litigation, defendants have merely filed an answer to the plaintiffs' complaint. Defendants' answers to plaintiffs' initial discovery requests were due to be completed on March 20, 1998. (Pl.'s Resp. at 18, n. 10). Proposed intervenors candidly acknowledge in their motion to intervene that "Defendants' cursory response to Plaintiffs' complaint reveals little about Defendants' intended defense of the University's admissions program...." (Mot. Int. at 8). The Court, mindful of the minimal nature of the proposed intervenors' burden at this stage, does not believe that the proposed intervenors have satisfied their burden of establishing how defendants' defense is inadequate to represent the proposed intervenors' interest.

In *Hopwood,* the Fifth Circuit, in affirming the district court's denial of the motion to intervene, focused on the proposed intervenors' respective inabilities to "demonstrat[e] that the State will not strongly defend its affirmative action program[,]" and to "[show] that they [proposed intervenors] have a separate defense of the affirmative action plan that the State has failed to assert." *Hopwood,* 21 F.3d at 606. The Court finds the Fifth Circuit's reasoning in *Hopwood* persuasive in that the Court does not believe in the instant case that the proposed intervenors have sufficiently articulated the existence of a separate interest on which the defendants will not adequately represent them. The proposed intervenors have succinctly stated their interests as the preservation of race as a factor in the admissions policy of the University. Presumably, the University, having voluntarily enacted the affirmative action pol-

icy in its admissions, has a strong interest in preserving the validity of its admissions program and will vigorously defend the continued utilization of race as a factor in admissions. In short, the Court believes that the proposed intervenors have failed to identify an interest, other than the preservation of race as a factor in admissions, on which the defendants in the case at bar cannot adequately defend them.

Moreover, the Court does not believe that the proposed intervenors have shown that they have "a separate defense of the affirmative action plan that the State has failed to assert." *Hopwood,* 21 F.3d at 606 (citing *Jansen v. Cincinnati,* 904 F.2d 336 (6th Cir. 1990)). The Court believes at this stage of the litigation, the proposed intervenors have failed to establish in any detail any alleged deficiencies in the defendants' intended defense of its admissions policy. The proposed intervenors' brief is devoid of the elaboration of any defense of the University's admissions policy which the proposed intervenors intend to assert that they believe the University will fail to assert on its own.

On the issue of inadequacy of representation, the proposed intervenors merely confine their challenge to conclusory allegations that the University is constrained by "legitimate governmental considerations," and "by their own institutional interest in academic freedom, their educational goals, and their fiscal and administrative concerns." (Mot. Int. at 9–10). While the proposed intervenors have highlighted these possible conflicts, they have failed to show in any detail how these perceived differences will inhibit the University's adequate representation of the proposed intervenors' interest.

For the reasons set forth above, the proposed intervenors' motion to intervene pursuant to Fed.R.Civ.P. 24(a)(2) shall be denied.

### Permissive Intervention

■ Fed.R.Civ.P. 24(b) provides in pertinent part:

Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The Court declines to exercise its discretion and allow the proposed intervenors to intervene in this litigation. While the Court does acknowledge that the proposed intervenors have a question of law in common with this action (i.e. the constitutional validity of the use of race as a factor in determining the propriety of admission to the University), the Court believes that their interests will be adequately represented by the University. Therefore, in the interest of the timely resolution of this action, the Court denies the proposed intervenors' motion for permissive intervention.

### Participation as Amicus Curiae

The Court will, however, permit proposed intervenors to participate as *amicus curiae.* Such participation shall be limited to the submission of briefs in support of or in opposition to motions filed by the parties to this action. The proposed intervenors shall be notified and shall receive copies of all pleadings hereafter filed in this lawsuit.

### Conclusion

For all of the foregoing reasons, the Court denies the proposed intervenors' motion to intervene pursuant to Fed.R.Civ.P. 24(a)(2). Alternatively, the Court declines to exercise its discretion and permit intervention pursuant to Fed.R.Civ.P. 24(b)(2). The Court, however, shall permit proposed intervenors to participate as *amicus curiae.*

An order consistent with this Opinion shall issue forthwith.